CHARLES McMICKEN, PLAINTIFF IN ERROR, *v.* AMOS WEBB, MARY ANN SMITH, IN HER OWN RIGHT AND AS TUTRIX, &c., AND IRA SMITH, IN HIS OWN CAPACITY AND AS TUTOR TO THE MINORS, CATHARINE AND SARAH SMITH.

Where a promissory note, payable to a firm, was signed by one of the partners in the firm together with two other persons, and suit was brought upon it against these two other persons in the name of the payee partner, upon the ground, that the note was intended for his individual benefit, and that the insertion of the name of the firm as payees was an error, it was clearly his duty to prove such error upon the trial.

If these two other persons were merely sureties (a fact for the jury), proof of such error would not make them liable beyond the terms of their contract, unless they were privy to and agreed to the same. Neither a court of law nor equity will lend its aid to affect sureties beyond the plain and necessary import of their undertaking. This is the doctrine of this court, of the State courts, and of England.

The payee partner having brought into the evidence the terms upon which the partnership was dissolved, by which it appeared to be his duty to collect the assets, pay the debts, and settle the concerns of the partnership, it was competent for the jury to judge whether the note was given provisionally and designed to abide the settlement of the affairs of the firm, and if so, then it became necessary for the payee partner to prove the fulfilment of these duties before any right of action upon the note accrued to him.

The note being drawn by one of the partners payable to his own firm, this drawer partner was entitled to one half of it, and the obligation of the sureties was diminished *pro tanto.*

Where the plaintiff excepted to the opinion of the court, which opinion was more adverse to the defendants than to the plaintiff, this court will not, at the instance of the plaintiff, reverse the judgment, although there may have been error in the instructions, provided that error consisted in giving the plaintiff too much.

McMicken *v.* Webb et al.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Louisiana.

It was formerly, in a preliminary stage of it, before this court, and is reported in 11 Peters, 25.

The facts of the case are sufficiently set forth in the opinion of the court.

It was argued by *Mr. Coxe,* for the plaintiff in error, and *Mr. Jones,* for the defendant.

Mr. Justice DANIEL delivered the opinion of the court.

The record in this cause being encumbered with matter deemed wholly irrelevant to the true points in controversy between the parties, much of this matter the court will pass over, embracing within its view such portions of the record only as regularly present those points, and the rulings of the Circuit Court with respect to them. In this view, little else need be presented except the pleadings in the cause, the note on which this action is founded, the fact of a copartnership between the plaintiff in error and James H. Ficklin, and the agreement comprising the terms on which the copartnership was dissolved, these three last-mentioned documents being referred to in the pleadings and appealed to by the parties on both sides of this cause to sustain the positions on which they respectively rely; and, lastly, the instructions prayed by the parties and given by the Circuit Court.

This is, according to the peculiar proceedings in the State of Louisiana, an action at *law,* although, from the mode of proceeding by petition, from the introduction into that petition of various matters dehors the instrument set out as the immediate cause of action, and from the converting in one proceeding parties standing *sui juris* with those who sustain a representative character, it bears a striking resemblance to a suit in equity.

The petition states, that, some time in the year 1815, the plaintiff and one James H. Ficklin formed a copartnership and transacted business under the name of McMicken and Ficklin; that about the 8th of September, 1817, the said copartnership was dissolved by mutual consent; that at the time of said dissolution there was a stock of goods on hand, which said Ficklin took and purchased at cost, with five per cent. addition thereon, and for the payment of one half of said stock of goods he gave to the petitioner a promissory note, dated September 20th, 1817, due and payable on the 1st day of March, 1819, to the order of McMicken and Ficklin, for the sum of $4,866.93½, executed by said Ficklin, by Jedediah

25 *

Smith, and Amos Webb, the defendant, whereby the drawers became bound to pay the whole of the said note, which note is annexed as a part of the petition.

The petitioner then proceeds as follows : —

"Your petitioner further shows that said obligation was erroneously made payable to McMicken and Ficklin, though in truth and in fact said note was dated and executed subsequent to the said dissolution of said firm, and was made towards and in behalf and for the sole and individual benefit of your petitioner, the joint name, or the name of the late firm, being used and intended for your petitioner's sole benefit, — said Ficklin being in no wise a party or interested therein except as one of the obligors.

"Your petitioner further shows, that since the execution of the said note or obligation, the above-mentioned Jedediah Smith, one of the coöbligors thereof, died, leaving his wife, the said Mary Ann Smith, and two minor children, Catharine and Sarah, all of whom now own and possess all the property and estate by the said Jedediah Smith left at his decease.

"The mother in right of her community, and said minors as heirs, and the said Mary Ann Smith, the widow of said deceased, has since married one Ira Smith, the said defendant herein, by reason of which said several premises, the said Mary Ann, Catharine, and Sarah have become obligated and bound, *in solido*, to pay your petitioner the whole amount of said note or obligation, together with interest, according to the tenor and effect thereof, which they refuse, though often and amicably demanded to pay."

The note on which this action was instituted and referred to in the petition is in the following words : —

*St. Francisville, Sept. 20th,* 1817.

$ 4,866.93½.    On the first day of March, 1819, we, or either of us, promise to pay, jointly or separately, unto McMicken and Ficklin, or order, four thousand eight hundred and sixty-six dollars ninety-three and a half cents, being for value received, with ten per cent. interest after due until paid.

James. H. Ficklin,
Jed. Smith,
Amos Webb.

The only remaining documentary evidence referred to in the petition, and in accordance with which it is alleged that the note in question was executed, is found in the agreement entered into by McMicken and Ficklin upon the dissolution of their copartnership, and is in the following words : —

"Memorandum of an agreement, made and entered into this 8th day of September, 1817, between Charles McMicken, jun., and James H. Ficklin, both of the town of St. Francisville, lately trading under the firm of McMicken and Ficklin; that they have this day by mutual consent dissolved their copartnership aforesaid, and that Charles McMicken, jun., is put in full possession of all the books, notes, and accounts, and all other papers relating to the firm aforesaid, with full power to settle and collect all the dues and demands owing to the said firm, either at law or otherwise, by exchange or reëxchange of notes or accounts, or any other mode he may think advantageous to the concern; and when in funds sufficient to pay off all debts that are due by the firm aforesaid, to pay the same, until full and final payment and settlements are made; and to employ at his discretion such person or persons as he shall think necessary, for the completion of the business; and that James H. Ficklin take all the goods on hand at cost, with an advance of five per cent. on the whole amount, payable as follows, viz. three thousand by his draft on Flower & Finley, with their acceptance thereof, payable the 1st March, 1818, and their acceptance in the same manner (or some good house in New Orleans in their stead) for any further sum to meet the one half of the whole amount of goods, payable on the 1st day of May, 1818, and for the remaining half he gives his joint note, with Amos Webb and Jedediah Smith, payable on the 1st March, 1819; and by the non-compliance of James H. Ficklin in giving the aforesaid acceptances and note, this agreement to remain null and void, so far as the sale of the goods to him; and all the sales of goods by him, for the period of thirty days, the time allowed him to comply with the foregoing, shall be carried to the joint benefit of the last firm.

"In witness whereof we hereunto subscribe our names, the day and date above written.

"JAMES. H. FICKLIN,
CHARLES MCMICKEN."

Several pleas were interposed by the defendants or respondents below to the demands in the petition. The court deem it necessary to advert to such of these pleas only as are connected with the points comprised in the rulings of the judge at circuit.

Thus in the 3d plea it is denied that the note in question was made to the petitioner, and that Ficklin, Webb, and Smith ever promised to pay the money therein mentioned to McMicken alone, or that the note was made on behalf of McMicken, or that the partnership name of McMicken and Ficklin was in-

tended to be used for the benefit of McMicken alone. They insist upon the contract as apparent on the face of the note, and call for strict proof of the allegations of the petitioner. They aver that it was well known that Webb and Smith signed the note as sureties, — that, if there ever was any consideration for their obligation, it has failed, and that neither Ficklin, as principal, nor Webb and Smith, as sureties, were ever bound to pay this note.

4. They plead further, and *specially*, a want of consideration, averring that Ficklin, as partner, was entitled to one half the stock; that he paid McMicken for one half by drafts and acceptances, mentioned in the article of dissolution, which were paid; that the demand of McMicken for the note of Ficklin, Webb, and Smith for the other half was a fraudulent contrivance, or an error or misconception of the parties, and could form no legal consideration for the note.

5. They further plead, that the note was executed by Ficklin, as principal, and Webb and Smith, as sureties, to McMicken and Ficklin, of which firm Ficklin was a partner; that by the dissolution of the firm one half of Ficklin's responsibility was extinguished by confusion, and Webb and Smith became thereby absolved *pro tanto;* that, under the agreement for the dissolution, McMicken had received $10,000 more than was requisite to pay the debts of the firm, for which excess he was accountable by the above agreement, and that thereby the note, to which Webb and Smith were mere sureties, was paid.

They further plead, that the note became due by its terms on the 1st day of March, 1819; that Ficklin died in 1817, leaving a will and appointing executors; that his estate has been regularly represented by executors since his death, and that by the laches of McMicken, in not settling the affairs of the concern or suing on the note from 1819 to 1835, he is barred by his negligence and by lapse of time.

And, lastly, they insist that, upon the dissolution of the firm of McMicken and Ficklin, McMicken had received all the books, notes, and claims due to the firm, and bound himself to settle all the affairs of the concern out of these funds, so far as they should prove adequate; that Ficklin was to take the goods on hand, to pay McMicken for one half of that stock in certain acceptances, and to execute his note, with Webb and Smith as sureties, for the remaining half in value, subject to a contingent responsibility upon the settlement of the concern by McMicken; that McMicken had not made such settlement according to the terms of the agreement of dissolution, and therefore had no right of action against the representatives of Ficklin or the respondents.

At the trial of this cause, the following instructions prayed for by the defendants were given by the court, and made the subjects of exception by the plaintiff: —

1st. That as plaintiff had alleged that there was error in making the note sued on, drawn in favor of and payable to McMicken and Ficklin, and that said note ought properly to have been made in favor of Charles McMicken only, plaintiff could not recover without proving such error and mistake; and if no such error or mistake was proved, the verdict of the jury ought to be in favor of defendants; for, without such proof, McMicken alone could not recover on a note drawn in favor of McMicken and Ficklin.

2d. That if the jury were satisfied that Webb and Smith were originally only sureties, and that whatever consideration there was for the note passed between McMicken as one party, and Ficklin as the other party, in such case an express written contract on the part of sureties is to be strictly construed in their favor, and they could only be made liable on their contract in the form and manner in which they had entered into it; and no proof of any error or mistake, as between the principal parties to the contract, could make mere sureties liable beyond the terms of the contract, unless they were privy to and agreed to the same; and if plaintiff could only recover against the principal party to the contract sued on by showing error or mistake in that contract, the verdict of the jury as regarded the sureties should be in their favor.

4th. That if the jury believed that the note sued on grew out of the settlement of the partnership affairs of McMicken and Ficklin, and was given provisionally in relation thereto, and that McMicken had charged himself with the settlement of the partnership affairs, that then McMicken cannot recover on this note without a final liquidation and settlement of the partnership affairs; and that if, under the circumstances aforesaid, McMicken persists in submitting the suit on this note to the decision of the jury, their verdict ought to be for the defendant.

5th. That if the jury believed that the note sued on was given to attend on a settlement and liquidation of the partnership affairs of McMicken and Ficklin, and McMicken charged himself with the liquidation and settlement of the partnership affairs of McMicken and Ficklin, and that McMicken has received partnership assets sufficient to pay the debts of the partnership, in such case plaintiff McMicken ought not to recover, and the verdict of the jury ought to be for the defendants.

6th. That if the jury believed that Ficklin was a partner of the house of McMicken and Ficklin, to whom the note was

payable, and that the said house has long since been dissolved, and that the same Ficklin was principal debtor, and Amos Webb and Jedediah Smith were only sureties in the note sued on, that these facts created a confusion of the characters of creditor and debtor; and whenever such event happened, there was a payment of the note to the extent of the correlative characters of debtor and creditor, which in this case was one half.

7th. That if the jury believed that the note sued on was given in pursuance of the terms of the dissolution of partnership between McMicken and Ficklin, and under an implied agreement that, if the debts due to the partnership were not sufficient to pay the debts due by the partnership, then Ficklin and his sureties were to make good and supply one half of the deficiency, and that McMicken charged himself with the liquidation of the partnership affairs in 1817, and that McMicken had not rendered an account of such liquidation before bringing this suit, it was competent for the jury to say that there was such a laches, neglect, and default on his part as discharged the sureties.

1st. We can perceive no objection to the ruling of the court in this instruction; neither argument nor authority can be called for, to sustain a position so elementary and so trite as that the allegation and proof must correspond. In this case, the petitioner alleges a separate and exclusive right in himself; the proof which he adduces discloses an equal right in another. He avers this discrepancy to be the result of error; he must certainly reconcile this contradiction, or his claim is destroyed by conflict with itself.

2d. This second instruction we hold to be correct. Even as between principals, a court will not bind parties to conditions or obligations to which they have not bound themselves, according to a fair interpretation of their contract. How far any written contract may be explained, as between parties confessedly principals, by evidence *aliunde*, is a nice and difficult question, always approached with doubt and caution; but as against a surety, neither a court of law nor a court of equity will lend its aid to affect him beyond the plain and necessary import of his undertaking. Equity will not, as against him, assist in completing an imperfect or defective instrument, much less will it add a new term or condition to what he has stipulated. He must be permitted to remain in precisely the situation in which he has placed himself; and it is no justification or excuse with another, for attempting to change his situation, to allege or show that he would be benefited by such change. He is said to possess an interest in the *letter* of his contract.

That this is the doctrine in England we see in the cases of Nisbet v. Smith, 2 Bro. Ch. R. 579, Rees v. Berrington, 2 Ves. jr. 540, and Boultbee v. Stubbs, 18 Ves. 20. It is the doctrine of this court, so declared in the case of Miller v. Stewart et al., 9 Wheat. 680. It is probably the doctrine of all the States; vid. Croughton v. Duvall, 3 Call, 69; Hill v. Bull, 1 Gilmer, 149. If, then, Webb and Smith were mere sureties in the note declared on, the plaintiff could not, by setting up another contract as formed or as intended to be formed between himself and Ficklin, transfer the responsibility of these sureties to such contract, differing in its terms from that which they had in fact executed.

4th and 5th, which should be numbered the 3d and 4th instructions. These two instructions are essentially the same. The petitioner, in his count or petition, sets out the fact of the dissolution of the firm of McMicken and Ficklin, and refers to the agreement of dissolution as evidence of the conditions on which it took place, and of the rights vested and the obligations imposed by that agreement. It is from this document that we gather the facts of the transfer of the goods on hand to Ficklin, in consideration of the acceptances to be procured and of the note to be executed by him, with Webb and Smith as his sureties, and the further facts of McMicken's possession of all the books, notes, and accounts of the firm, and of his obligation to collect the resources and to pay the debts and settle all the affairs of the concern, so far as the means placed at his command were adequate for these ends. The above facts, disclosed by the petition and the agreement of dissolution, were certainly competent evidence for the consideration of the jury, and from which they might infer the purpose for which the note to McMicken and Ficklin was executed, the duty of McMicken to settle the partnership affairs, and to pay the debts of the concern with the funds placed at his disposal; and if they should infer from these facts, that the note executed to McMicken and Ficklin was given provisionally, and designed to abide the settlement of the affairs of the firm, and that McMicken was bound by the agreement of dissolution to liquidate and settle the affairs of the firm, then the jury were bound to find that the fulfilment of these obligations on the part of McMicken should precede any right of action on the note, and that, without proof of such fulfilment, they were equally bound to find for the defendants.

6th. This instruction affirms a position, as to which, we presume, there can be no room for difficulty or doubt; namely, that on the note given by Ficklin to his own firm of McMicken and Ficklin, with Webb and Smith as sureties, Ficklin, as a part-

ner, was entitled to one half, upon the dissolution of the firm, and that thereupon, *pro tanto,* the obligation of these sureties would cease, as Ficklin could have no right of action against himself to compel payment to himself.

7th. With regard to the instruction numbered 7, given on the prayer of the defendant, we deem it to be in substance the same with Nos. 3 and 4, which having been already examined and approved, it is unnecessary to review in detail the same questions in the last instruction.

There is, also, though not designated by any number, what is denominated in the record an "additional charge" prayed by the defendants. This, upon examination, being found a mere general legal proposition in the language of the 2094th article of the Civil Code, and no immediate application or connection of which to the pleadings or testimony in this case being attempted nor being perceived by the court, it is passed by as immaterial and unimportant.

On the part of the plaintiffs, there are instructions prayed, and designated on the record as No. 2 and No. 3; and in No. 2 by the irregular ordinal arrangement of 4th and 7th; in No. 3 in the arrangement of 1st, 2d, and 3d.

Instruction 4th, in the first division, is in the following words: — "That the defendants to this suit, having bound themselves *in solido,* cannot claim the right or oblige the plaintiff to discuss the property of Ficklin or his succession. (Civil Code, art. 3015, 3016.) The court below very properly disposed of this prayer (as it might have disposed of what was called the additional charge prayed on behalf of the defendants), by justly remarking, that its applicability to the cause was not perceived, as the defendants were not endeavouring to interfere with the property or affairs of Ficklin any farther than to assert the true import and character of their own contract with McMicken and Ficklin, which they had an unquestionable right to do.

With regard to the prayers 1st, 2d, and 3d, in No. 3, although their relevancy to the true issues taken in this cause is not shown, and the opinion of the court is perhaps not sustainable with respect to them, yet as that opinion, so far as expressed, is more adverse to the defendants than to the plaintiff, and the defendants have not asked its reversal, no right can be recognized in the plaintiff to complain that he has failed to obtain all he required, when he has already obtained too much. Upon an examination of this somewhat anomalous and confused record, we have come to the conclusion, that the judgment of the Circuit Court should be, and it is hereby accordingly affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby affirmed, with costs.