## THE MANUFACTURERS' NATIONAL BANK OF NEWARK v. DANIEL M. DICKERSON ET AL.

D., with S. and B. as sureties, gave bond, dated April 30th, 1873, reciting that D. had been appointed an assistant clerk of the bank, and conditioned that he should in all things, while he should be in the employ of the said bank as such assistant clerk, faithfully perform his duties as such assistant clerk. From November 20th, 1872, to July 1st, 1874, D., as the younger of two assistant clerks, held the lowest position in the bank, at a salary of $200, his duties being chiefly those of a runner or messenger. On July 1st, 1874, he was promoted to the next highest clerkship, at a salary of $360. On February 15th, 1876, he was further promoted to the position of book-keeper, at a salary of $500, and as such took charge of the individual debit and credit books, and exclusive charge of the ledger of individual accounts. His place as book-keeper was so near the money drawer that he might easily take out a $100 bill, and cover the fraud by altering the footing of the credit book. His embezzlements, beginning with $100, April 27th, 1876, amounted to a large sum, and were concealed by means of false entries in the books kept by D. After his second promotion, the sureties had no notice of the change made by the bank in his position and duties. *Held*—

1. That the defendants are not liable for any want of faithfulness on the part of D. after his second promotion.

2. That when he was promoted to the position of book-keeper he ceased to be an assistant clerk within the meaning of the bond.

3. That upon a fair construction of the contract, the sureties could not have contemplated a liability after such a promotion.

4. That the promotion involved a material alteration of the principal's duties, increased the perils of the sureties, and released them from the bond.

In debt. On case certified from the Essex County Circuit Court. The facts are fully stated in the opinion of the court.

Argued at June Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE and WOODHULL.

For the plaintiff, *Joseph Coult.*

For the defendants, *F. H. Lum.*

The opinion of the court was delivered by

WOODHULL, J.  This action was brought to recover the penalty of a bond, dated April 30th, 1873, given by the defendant, Dickerson, as principal, with Sieb and Bea as sureties, in the penal sum of $5000, conditioned that whereas the said Dickerson had been appointed an assistant clerk of the said bank, therefore, if the said Dickerson should in all things, while he should be in the employ of the said bank as such assistant clerk, faithfully perform his duties as such assistant clerk, then the bond to be void.

The cause having been tried at the Essex Circuit without a jury, is certified to this court for its advisory opinion upon the question, " Whether, under the evidence in the cause, Gottlob Sieb and John Bea, the sureties on the bond declared on, are released."

The material facts are these : Dickerson was first employed by the bank November 20th, 1872.  From that time up to July 1st, 1874, as the younger of two assistant clerks, he held the lowest position in the bank.  On July 1st, 1874, he was advanced to the position of second assistant clerk, and on February 15th, 1876, he was further advanced to the position of individual book-keeper, and took exclusive charge of the ledger of individual accounts.  On his promotion, July 1st, 1874, his salary, which up to that time had been $200 a year, was increased to $360, and on his second promotion, February 15th, 1876, was further increased to $500.

His duties in the first position were chiefly those of a runner or messenger.  He took out drafts for collection, received for them money or checks, and charged the checks in the debit book.  He had no proper access to either of the ledgers.

In the second position his principal duties were to charge the foreign checks in the journal ; to foot up that book at night to see that the debit and credit sides agreed ; to take charge of the city collection notes, and to assist in the correspondence.  In the third position he was book-keeper, and had charge, as such, of the ledger of individual accounts, the individual debit book, the individual credit book and the dis-

count book. He posted into the ledger the debits from the debit book, and the credits from the credit book; he wrote up the dealers' pass books, and returned their vouchers. His place as book-keeper was so near the money drawer that, in the language of the cashier, "it was a very easy thing, when the teller's back was turned, to take a $100 bill, as that would be the nearest to him; the bills were arranged in order, $1, $2, &c., and $100, the larger bills, being to the right of the drawer; and it was a very easy thing to take a $100 bill and alter the footing of the credit book."

Dickerson's embezzlements, beginning with $100, April 27th, 1876, amounted to a large sum, and were concealed by means of false entries in the books which he kept after his second promotion. The sureties had no notice of the change made by the bank in his position and duties.

The question whether the defendants are released depends on the true, construction of their bond, and the legal interpretation of the foregoing facts.

The rule of construction to be applied to contracts of suretyship, as stated in *Miller* v. *Stewart*, 9 *Wheat.* 680, is to the effect that the liability of a surety is not to be extended, by implication, beyond the terms of his contract; that he is bound only to the extent, and in the manner and under the circumstances pointed out in his obligation, and no further; that it is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit; that he has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal.

That a surety is not to be held beyond the precise terms of his contract, is declared by Kent, J., in *Ludlow* v. *Simond*, 2 *Cai. Cas.* 1, to be a well-settled rule, both at law and in equity, and to be founded on the most cogent and salutary principles of public policy and justice. *S. C.*, 2 *Am. Decisions* 291 ; *McMicken* v. *Webb et al.*, 6 *How.* 292 ; *Bowmaker* v. *Moore*, 7 *Price* 223 ; *Smith* v. *United States*, 2 *Wall.* 219 ; *McCluskey* v. *Cromwell*, 11 *N. Y.* 593.

Resulting from the principles just stated is the familiar rule that the surety is discharged if, without his consent, the principal parties make a new agreement inconsistent with the terms of the original agreement, or in the mode of performing them. *Theobald on Principal and Surety* 119, (1 *Law Lib.*, vol. *LXX.*); *Whitcher* v. *Hall*, 5 *B. & C.* 269; *Pitman on Principal and Surety* 166 (*Law Lib., vol. XL.*)

From the same principles results also another rule, still more closely applicable to the case before us, namely, that when there is a bond of suretyship given for an officer, and by the act of the obligee the office is materially changed, so as to affect the risk of the surety, the bond, as to him, is avoided.

In *Pybus* v. *Gibb*, 6 *Ellis & Black.* 902, (88 *E. C. L.* 88,) a bond was executed by G. and two sureties, conditioned for indemnifying the high bailiff of a county court against liabilities for the misconduct in office of G., who was appointed by the high bailiff to act under him as a bailiff of said court. At the time the bond was executed, the jurisdiction of the county court was regulated by statute 9 and 10 *Vict.* After the execution of the bond, the jurisdiction of that court was extended and increased by several statutes. It was held that these statutes had so materially altered the nature of the office of bailiff that the sureties were no longer liable to indemnify the high bailiff, even though the misconduct of G. was in respect of a matter within the jurisdiction conferred by the statute first named, and as to which the duty of the bailiff was not altered by the later acts.

Campbell, C. J., who delivered one of the opinions in that case, says: "It may be considered settled law, that where there is a bond of suretyship for an officer, and by the act of the parties, or by act of parliament, the nature of the office is so changed that the duties are materially altered, so as to affect the peril of the sureties, the bond is avoided, * * * the question is whether the nature and functions of the office or employment are changed; for if they are, it is not the same office within the meaning of the bond."

Coleridge, J., in the same case, says: "The rights and lia-

bilities of sureties have often been considered in England, and many points are well established. One is, that when the nature of the employment of the principal is so altered by the act either of his employer or of the legislature that the risk of his surety is materially altered, the surety has a right to say, 'I did not bargain for this risk; I am discharged.'"

Wightman, J., says, in the same case: "It may be taken as a principle of law that a bond by a surety, conditioned for the due performance by his principal of the duties of an office, is rendered null if the office or its duties are so altered as in any degree to increase or vary the risk of the surety, to his possible disadvantage."

Cases to the same effect as those already mentioned might be cited almost without limit. Many additional ones are referred to in the brief of defendants' counsel, and I find nothing to the contrary.

Applying the principles of these authorities to the ascertained facts in the case, I am unable to see how the plaintiff can maintain this action.

The following propositions, contended for on the part of the defendants, seem to me to be fully sustained: 1. That the defendants are not liable for any want of faithfulness on the part of Dickerson after his second promotion. 2. That when he was promoted to the position of book-keeper, he ceased to be an assistant clerk within the meaning of the bond. 3. That upon a fair construction of the contract, the sureties could not have contemplated a liability after such a. promotion. And, 4. That the promotion involved a material alteration of the principal's duties, increased the peril of the sureties, and released them from their bond.

It is argued for the plaintiff, "that the change made by the bank in the work done by Dickerson was not material; the risk of the sureties was not increased. It was not a change of duties. He still remained an employé of the bank, and the testimony shows that the cashier or bank officers had the right, and exercised the right, of requiring any clerk in the bank to do the work generally done by some other clerk, even

to taking the place of the cashier. The book-keeper and clerks change places and aid each other. While each, acting in his own place, may have duties to perform, each acts, and is expected to act, outside of his own sphere, and to do any work which he may be able to perform, that the interests of the institution require."

The argument, so far as it asserts that the change made by the bank in the work done by Dickerson was not material, and that the risk of the sureties was not thereby increased, is effectually disposed of by referring to the undisputed facts in the case.

The change in the work done was from that pertaining to the lowest office in the bank to the work required in an office two degrees higher, commanding more than double the compensation, different in its character, in the range of its duties, in its opportunities for peculation, and therefore requiring not only a greater capacity, but a firmer integrity. If such a change was not material, it would be difficult, I think, to affirm the materiality of any change whatever.

The fallacy of the argument for the plaintiff lies in the assumption that the defendants bound themselves for the faithful performance by Dickerson of all his duties while in the employ of the bank, without designating any particular office or capacity in which the duties were to be performed. But the defendants' undertaking, instead of being general in its character, was very special and limited. Their bond having recited that Dickerson had been appointed an assistant clerk, their undertaking for him was in terms limited to the period during which he should be in the employ of the bank *as such assistant clerk,* and was only for the faithful performance of his duties *as such assistant clerk.*

The office designated was as well known to all the parties to the bond, and was as little liable to be mistaken for another, as that of teller or cashier.

The only legal inference to be drawn from the language of the bond is, that these sureties never intended to bind themselves for the faithful performance by Dickerson of any duties

other than those required of him while he held the office of assistant clerk, and performed by him as such assistant clerk. They could not, therefore, be held liable for any want of faithfulness on his part, after his promotion to another office, for the reason that, upon such promotion, he ceased to be, within the meaning of the bond, or in any fair sense, in the employ of the bank as an assistant clerk.

*Rochester City Bank* v. *Elwood*, 21 *N. Y.* 88, referred to and much relied on by counsel for the plaintiff, does not appear to me to be in conflict with the views just expressed.

In that case the bond recited that one G. had been appointed assistant book-keeper of the Rochester Bank, and was conditioned that he should "faithfully discharge the trust reposed in him as such assistant book-keeper."

While still holding and exercising the office of assistant book-keeper, he embezzled the funds of the bank, and covered the fraud by false entries in one of the books. This was held to be, as it plainly was, a breach of the surety's undertaking.

There the surety was liable, because the principal had not faithfully discharged the trust reposed in him as assistant book-keeper. Here the sureties are not liable, because their principal did in all things, while in the employ of the bank as assistant clerk, faithfully perform his duties as such assistant clerk.

My conclusion is that, under the evidence in this cause, Gottlob Seib and John Bea, the sureties on the bond declared on, are released, and the Circuit Court is so advised.