(83 N. W. Rep. 15.)

---

CASS COUNTY *vs.* AMERICAN EXCHANGE STATE BANK.

Opinion filed May 12, 1900.

**Action on Bond—Evidence—Erasure.**

> In an action upon a bond with a large number of sureties, it appeared on the face of the instrument that one name that had been signed as surety had subsequently been erased, and other names appeared below the erased signature. *Held,* that the bond was primarily admissible in evidence, that the legal presumption was that the erasure was innocent and not fraudulent in fact or in law, and that the burden rested upon the other signers to show that their implied contract of contribution had been altered by the erasure.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the County of Cass against the American Exchange State Bank of Buffalo and others. Judgment for defendants, and plaintiff appeals.

Reversed.

*Fred B. Morrill* and *Edward Engerud,* for appellant.

Plaintiff proved the execution and delivery of the bond in suit, but it was refused admission in evidence because of an alteration or erasure appearing on its face. This was error, because the presumption was that the alteration was made before delivery and the defendants had the burden of showing that such alteration was made after delivery. *Hagen* v. *Ins. Co.,* 46 N. W. Rep. 1114; *Wilson* v. *Hayes,* 40 Minn. 531, 4 L. R. A. 196; *Little* v. *Herndon,*

77 U. S. 156; *First Nat. Bank* v. *Laughlin,* 4 N. D. 391, 61 N. W. Rep. 473. The erasure or change of name, even if made by the company's officer, after delivery, without the consent of the obligors, would not be material, as it does not change in any manner the rights and obligations of the parties. 2 Am. & Eng. Enc. L. 222, 223 and note 1; *Dirby* v. *Thrall,* 44 Vt. 413, 8 Am. Rep. 389; *Turner* v. *Billagram,* 2 Cal. 520; Throop on Pub. Officers, § 190; Note B to *Master* v. *Miller,* Smith's Leading Cases (9th Ed) 1169.

*Barnett & Rees,* for respondent William Beard.

*W. J. Clapp,* for respondent Neil McPhedron.

*Newman, Spalding & Stambaugh,* for respondents W. W. Merrill, P. Masterson, C. A. Bullamore, and P. T. Peterson.

This case falls within the rule that an alteration raises a presumption against the bond when it is suspicious, and this question must be determined solely from the face of the instrument. The character of the alteration, and the facts, are presumptions of fact which arise from its appearance. The bond shows upon its face that Jones' name was erased and Masterson's placed upon the bond after all the other bondsmen had signed it. There is no reason why Masterson should have signed this bond at all. There are eight sureties upon the bond without him. If this substitution was made after the other sureties had signed, and without their consent, they were all released. Murfee on Official Bonds, § 760; *State* v. *Craig,* 12 N. W. Rep. 301; *United States* v. *Smith,* 2 Wall. 219. The alteration being suspicious, before the bond could be offered in evidence it was incumbent on plaintiff to explain the alteration. *United States* v. *Smith,* 2 Wall. 219.

BARTHOLOMEW, C. J. The defendant the American Exchange State Bank of Buffalo, pursuant to the provisions of article 8, chapter 26, Pol. Code, became a depository of county funds for the plaintiff county. For the proper security of said deposits, said defendant executed its bond to said county, with all the other defendants as sureties thereon. The bank failed to pay over the funds deposited as by said bond it was required to do, and this action is on the bond, to recover the balance unaccounted for. The bank made default, as did the defendants Bayley and Moug. The other defendants answered, setting up, in effect, that the bond sued upon was not their contract, by reason of certain erasures. Plaintiff at the trial offered the bond in evidence. It was objected to by reason of the erasures. The objection was sustained. Plaintiff then proved that when the bond was delivered it was in the same condition as when offered in evidence, and again offered the bond. The same objections were repeated, and the bond was again rejected. The basis of plaintiff's action being thus excluded, the court, on motion of the defendants, directed a verdict in their favor.

The only assignment of error that we shall discuss is that relating to the ruling in excluding the bond. The original bond was sent

up with the record, and by stipulation we are requested to examine it. We find that the bond consists of a single page, and was prepared on a typewriter. A space was left for the insertion of the names of the sureties, and these were inserted with a pen, doubtless after the bond was signed. The obligee in the bond has been changed from the board of county commissioners of Cass county to the county itself. It is conceded that defendants cannot escape liability by reason of these facts. At the bottom of the sheet upon which the bond is found were prepared eight lines for the names of the sureties. It was evidently one of those cases where the principal went in search of sureties, without knowing who they would be. But we find the lines filled in the following order: S. E. Bayley, Neil McPhedron, John Moug, W. W. Merrill. On the fifth line was originally written the name of W. L. Jones, but this name has been erased by a red ink mark drawn through it. On the sixth line and following are the names of C. A. Bullamore, Reuben Beard, and P. T. Peterson. These names filled all the lines, and the last line is very near the bottom of the sheet, but crowded in below it is the name of the defendant James A. Winsloe. There is no room for anything below Winsloe's name. But, returning back to the fifth line, we find in the space above the erased name of W. L. Jones the name of the defendant P. Masterson. This defendant testifies that he was called into the office of the bank about 7 o'clock in the evening and signed his name to the bond; that the red-ink erasure over the name of W. L. Jones appeared at that time. From the appearance of the bond, we think it a fair inference that the defendant was the last signer on the bond, as it is not reasonable to suppose that he would have crowded his signature in where we find it, had there been room below. It is the erasure of the signature of W. L. Jones that is relied upon as warranting the rejection of the bond. As to the time of the erasure the record is silent, further than the fact that it was erased before Masterson signed. There is nothing to show whether the erasure was made before or after the names below the erasure were signed, nor is there any evidence to show whether or not any of the sureties aside from Masterson ever consented to, or had any knowledge of, such erasure.

Under these facts, what is the rule of law as to the admission of the bond in evidence? In the case of *Bank* v. *Laughlin,* 4 N. D. 391, 61 N. W. Rep. 473, this court, without citing the authorities, declared that "the legal presumption, prima facie, is that alterations appearing upon written instruments were made before delivery." We regard that as the better rule at the present day. Every phase of decision on the point can be found in the books. A review would be profitless. We content ourselves with quoting from Mitchell, J., in *Wilson* v. *Hayes,* 40 Minn. 531, 42 N. W. Rep. 467, 4 L. R. A. 196: "The question of presumption and burden of proof, where interlineations or erasures appear on the face of an instrument, is one upon which there is a wilderness of authorities and much conflict of opinion. Any attempt to cite or consider the

innumerable cases on this question would be both impracticable and useless. The rule adopted by some authorities is that the presumption, in the absence of evidence to the contrary, is that the alteration was made before execution, and therefore that no explanation is required in the first instance, while others hold, in accordance with the instruction of the trial court in this case, that the presumption of law is that the alteration was made after delivery, and therefore the burden is upon the holder to explain it, and show that it was made under circumstances that would not invalidate the instrument. In addition to these two leading and opposing views, different courts have adopted certain intermediate or compromise rules, none of which need be here referred to, except one, seemingly adopted by some very eminent courts, to-wit: that the alteration raises a presumption against the instrument when it is suspicious; otherwise, not. But this furnishes no definite rule by which to determine when the burden is upon the holder to explain the alteration, and when it is not. Who is to determine, and by what test, whether the alteration is suspicious? And, if held suspicious, when must it be explained,— before or after it is admitted in evidence? Evidence as to when, by whom, and with what intent an alteration was made may be one or both of two kinds,—extrinsic or intrinsic; the latter being that furnished by the inspection of the instrument itself, such as its appearance, the nature of the alteration, etc. These things, considered in connection with the relation of the parties to the instrument, may often constitute important evidence. And it seems to us that the rule just referred to amounts to nothing more than saying that in some cases this intrinsic evidence may tend to prove that the alteration was made after delivery, and therefore throw the preponderance on that side, unless the holder of the instrument produces extrinsic rebutting evidence. This construed, we could find no special fault with the rule. But it is incorrect to call this a presumption of law; it is simply an inference of fact drawn from evidence in the case." We deem these observations sound and practically unanswerable, and the rule thus announced will, with our present method of doing business, work justice much more certainly than any other rule. Under it the instrument would always be primarily admissible in evidence. If its appearance was suspicious,—in other words, if it carried intrinsic evidence of having been altered after execution,—that would always be a matter to argue to the jury. The other party—the party who, of all persons, best knows whether the erasure was made before or after execution—may always introduce testimony on the point. It is ordinarily no hardship to require him to do so. In cases like the one at bar the party suing will know what condition the instrument was in when it came to his hands, but he cannot know its condition when each signature was affixed; and to show that he must, almost of necessity, depend upon the testimony of the defendants. That always places him at a disadvantage, and is not in furtherance of justice.

If the erasure in this instance was in the body of the instrument,

we might stop here, but it is not. It is in the signatures. The express contract has not been changed in any manner to affect the rights of the obligors. The change, if any, is in the implied contract of contribution among the sureties. The first man who signed the bond signed with the understanding that the principal would procure such additional sureties as might be necessary to make. the bond comply with the requirements of the law. Each subsequent surety signed with the same understanding, and with the additional understanding that the particular persons whose names preceded his as sureties should be liable to him in contribution, should he be required to pay the bond. He signed, relying upon their financial responsibility. It is clear, then, that if, after a name is signed as surety, the name of a preceding surety should be erased without the knowledge or consent of the subsequent signer, that, as to him, his contract would be materially altered. It becomes important, then, to determine whether the name of W. L. Jones was erased before or after the names appearing below were signed. But it is a question of fact, and not a question of law,—a question for a jury, and not for a court. We can find no reason for the application of any different principle because the erasure appears in the signatures. If it contains intrinsic evidence that the erasure was made after the other signatures were added, the defendants can urge that before the jury, and it is to their advantage to have the bond in evidence. If it contains no such intrinsic evidence, they cannot object to it. The obligor cannot know the condition of the Jones signature when the following names were signed. But such signers do know, and it is no hardship on them to require them to disclose their knowledge. Counsel for respondents, in their brief, say: "In this case the alteration is not in the body of the instrument; nor is any proof necessary to show that it was made after the signatures of four of the bondsmen had been affixed to the bond, and before the others." If that be true, then surely the subsequent signers have no standing to defeat this action. Nor have the preceding signers, because they did not sign under any agreement or understanding that Jones was to be one of the sureties. True, counsel say that the condition stated in the quotation from their brief brings this case clearly within the ruling in *State* v. *Craig,* 58 Ia. 238, 12 N. W. Rep. 301, and that all the sureties are released. Counsel misapprehend the case. It was an action on an official bond with a large number of sureties. A name about the middle of the list of signers had been erased. There was no question as to the admissibility of the bond, but the undisputed testimony showed that the erasure was made after all the sureties had signed, and without the knowledge or consent of any, but before delivery. The court held that, as to all sureties who signed after the surety whose name was erased, the erasure changed their contract, and the principal had no authority to deliver the bond as thus changed to their prejudice, and that such sureties were released by reason of the change. As to the sureties whose names preceded the erased signature, the court held that the

implied contract under which they signed, to the effect that the principal would provide a sufficient number of sureties to insure the approval of the bond under the law, had not been complied with. The court could not presume that the bond met that requirement, with so many sureties released. We certainly make no criticism upon that case. The case of *Smith* v. *U. S.*, 2 Wall. 219, 17 L. Ed. 788, is much relied upon by respondents, but it decides no point as to the admissibility of the bond. True, it states (and many such decisions may be found) that, where an alteration appears in an instrument, the party offering it in evidence is bound to show that the alteration was made under such circumstances that it does not affect his right to recover. But in that case the bond was admitted in evidence, and while it was admitted over objection, and the point saved, yet it is not further noticed in the opinion, and the case was reversed for refusal to give an instruction asked. But, had that case ruled against the admission of the bond, we could not follow it, because we hold, in accord with what we regard as the preponderance of the recent decisions, and certainly the better reasoning, that an alteration is not presumptively fraudulent, either in fact or law. The judgment of the District Court is reversed, and a new trial ordered. All concur.