(92 N. W. Rep. 56.)

---

CASS COUNTY *vs.* AMERICAN EXCHANGE STATE BANK.

---

County Depository—Indemnity Bond—Erasure of Surety's Name—Effect—Release of Surety.

Defendants signed a bond to indemnify the county of Cass on account of the designation of the Exchange Bank of Buffalo as a depository of county funds, under section 1941, Rev. Codes, which require such bond to be signed by not less than five freeholders, and to be approved by the county commissioners. The bond was circulated for signatures by an agent of the principal in the bond. There was no express agreement or understanding either as to the particular persons or as to the number of persons who were to sign such bond. After six persons had signed, the name of Jones, who was the fifth signer, was erased by the agent without notice to or consent by the four persons signing first, and without notice to

or consent by Bullamore, who was the sixth signer, and who signed the bond before the name of Jones was erased. At the time of such erasure by the agent, the bond was not completed. The names of the signers had not been inserted in the body of the bond, nor had all the signatures thereto been obtained. The erasure was made by drawing a red ink line through the name, and was plainly discernible. The agent intended to procure two more sureties besides the six who had signed when the name of Jones was erased, before presenting the bond for approval by the commissioners. After the erasure of Jones' name, four other sureties signed the bond. It was then presented to the commissioners for approval, and was approved. *Held*:

1. That the four signers of the bond whose signatures precede that of Jones signed the bond without reference to the signature of Jones or Bullamore. Therefore such four signers are liable upon the bond despite such erasure.

2. That Bullamore, the sixth signer, who signed next after Jones, and before the erasure of Jones' name, and who did not consent to the erasure, is not bound as a surety.

3. That the four persons signing after the erasure, and with knowledge thereof, are estopped from claiming prejudice by reason of such erasure.

4. The erasure of the name of Jones was such a patent fact as put the commissioners on inquiry as to the circumstances connected with the erasure. Such inquiry would have disclosed the fact that Bullamore, the sixth signer, was prejudiced by the erasure, and therefore released from liability. Hence it must be presumed that the commissioners approved the bond with knowledge of his release.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the County of Cass against the American Exchange State Bank of Buffalo and others. From the judgment, plaintiff appeals. Reversed.

*Newton & Smith; Morrill & Engerud,* for appellant.

Where a surety claims to be released by reason of transactions occurring before delivery of the bond, he must establish, First, that he signed the bond and left it with a third party for delivery only on certain express or implied conditions and that the obligee had actual or implied notice of the conditions. *State* v. *McGonigle,* 8 L. R. A. 735. The obligee of the bond had no notice that the delivery was unauthorized by reason of the violation of the implied conditions under which the bond was signed. The absence of such knowledge is fatal to the defense. *State* v. *Potter,* 63 Mo. 212; *Dair* v. *U. S.,* 83 U. S. 1; *State* v. *Peck,* 53 Me. 284; *Taylor County* v. *King,* 73 Ia. 153; *State* v. *Pepper,* 31 Ind. 76. Notice to one member of a board consisting of several persons is not notice to the board, unless notice was communicated to the other members, or unless the member notified was acting as a committee or agent for the board in the particular transaction in reference to which the knowledge was acquired.

*National Bank* v. *Norton,* 1 Hill 572; Beech on Corp. 185; *Shaw* v. *Clarke,* 49 Mich. 384; *Plank* v. *Paine,* 25 Conn. 444; *Bank* v. *Cornen,* 37 N. Y. 320; *Wheel Co.* v. *Wagon Co.,* 20 Fed. Rep.

699; *West, etc., Bank* v. *Thompson,* 127 Mass. 506; *Yellow Jack* v. *Stephenson,* 5 Nev. 224; *Farrell Foundry Co.* v. *Dart,* 26 Conn. 376; *Cuter* v. *Tompkins,* —— Pa. St. ——; *Armtrong* v. *Abbott,* 17 Pac. Rep. 517. It is conceded that notice to the board of county commissioners was a notice to the county. 1 Am. & Eng. Enc. Law, 1146. Stafford was not acting for the board in reference to the bond when he suggested an erasure. The board was not in session and he was acting in his private business. He wished to withhold from the board the fact that Jones could not justify on the bond. Under such circumstances, notice to the agent is never notice to the principal. 1 Am. & Eng. Enc. Law, 1145 (note 2). On the trial a full hearing was had and all facts either conceded or settled by the jury. This appeal presents questions of law only. Under such circumstances no new trial is required.

*Allen* v. *Bank,* 120 U. S. 20; *Roberts* v. *Corbin,* 28 Ia. 355; *Marquart* v. *Marquart,* 12 N. Y. 336. *Swift* v. *Agnes,* 33 Wis. 228.

*Newman, Spalding & Stambaugh; Barnett & Reese,* and *W. J. Clapp,* for respondent.

The alteration complained of was made before the delivery and approval of the bond. A county officer is not authorized, in behalf of the county, to make an alteration in the bond given to the county, or to release surety from such bond. The power of the county commissioners is exhausted by the approval of the bond. An alteration by them has the same effect, and no greater, than an alteration by a stranger. *Hunt* v. *Gray,* 35 N. J. L. 227, *Bigelow* v. *Stelfen,* 35 Vt. 519; *State* v. *Berg,* 50 Ind. 496; *Medlin* v. *Platt County,* 8 Mo. 235; *State* v. *McGonigle,* 8 L. R. A. 7339, 13 S. W. Rep. 758. The question is whether the bond is the deed of the sureties. The doctrine of spoilation has nothing to do with the controversy. *State* v. *McGonigle,* 13 S. W. Rep. 758; *Renville County* v. *Gray,* 61 Minn. 242, 63 N. W. Rep. 635; *State* v. *Blair,* 32 Ind. 313; *Cheek* v. *Nall,* 17 S. E. Rep. 80; *State* v. *Churchill,* 3 S. W. Rep. 352 and 880. The bond must be delivered before the liability of the sureties is affixed. The bond which the sureties executed was not delivered and the bond approved was not the one signed by them. *People* v. *Kneeland,* 31 Cal. 288; *State* v. *Polk,* 7 Blackf. 27; *Bracken County* v. *Daum,* 80 (?) 388; *Howe* v. *Peabody,* 2 Gray 556 *Fairhaven* v. *Cowgill,* 8 Wash. 683, 36 Pac. Rep. 1093; *Smith* v. *U. S.* 2 Wall. 219, 17 L. Ed. 788. The bond was strictly statutory. It showed in its recitals that it was a public depository bond, provided for in § 1941, Rev. Codes. The statute is mandatory and the presentation of a bond in compliance with § § 1941 and 5319, Rev. Codes, was jurisdictional to the action of the commissioners. The full number of sureties obtained was required to secure the approval. *Cass County* v. *American Exchange State Bank,* 9 N. D. 363-267, 83 N. W. Rep. 12. Each surety who signed could rely upon the agreement implied by law, that the persons who signed

or who signed the bond as co-sureties with him would be liable to him in contribution in case of loss. It is not sufficient that he may sustain no injury by the change of the contract or that it may even be for his benefit; a surety has a right to stand upon the very terms of his contract. *Miller* v. *Stewart,* 9 Wheat. 703; *Smith* v. *U. S.* 2 Wall. 219, 17 L. Ed. 792; *Northern Light* v. *Kennedy,* 7 N. D. Rep. 146; § 4651, Rev. Codes; *State* v. *Churchill,* 3 S. W. Rep. 357; *State* v. *Allen,* 10 So. Rep. 473. Bullamore was released because he signed the bond while Jones' name was upon it as surety, and the erasure was made without his knowledge or consent. *Farnham* v. *Cowgill,* 36 Pac. Rep. 1093; *Hessell* v. *Johnson,* 30 N. W. Rep. 209; *State* v. *Findley,* 14 S. W. Rep. 111; *Smith* v. *Weld,* 2 Pa. St. 54; *Cass County* v. *American Exchange State Bank,,* 9 N. D. Rep. 267, 83 N. W. Rep. 12. The erasure of Jones' name by drawing through it a red ink line was patent on the face of the bond at the time it was presented to the board for approval and amounted to constructive notice to the board. § 5118, Rev. Codes; *State* v. *Allen,* 10 So. Rep. 473; 16 Am. & Eng. Enc. L. 792; *State* v. *McGonigle,* 13 S. W. Rep. 578. Winslow was the agent of the sureties only for the purpose of getting a sufficient number to sign to comply with the statutes and had no authority to release any person who signed the bond as surety, or to change in any manner the obligation of any person who should sign as surety without his consent. *City of Fairhaven* v. *Cowgill,* 36 Pac. Rep. 1095; *State* v. *McGonigle,* 13 S. W. Rep. 758; *State* v. *Craig,* 12 N. W. Rep. 301. Stafford, one of the members of the board present at the meeting of the approval of the bond, had actual knowledge of the fraud on the other sureties. The corporation for which he acted is affected by his knowledge. *Bank* v. *Dennis,* 2 Hill, 451; *National Savings Bank* v. *Kushman,* 121 Mass. 490; *Innerarity* v. *Merchants' State Bank,* 139 Mass. 332; *Davis Imp. Co.* v. *Davis Iron Co.,* 19 Fed. Rep. 701; *Clerks' Savings Bank* v. *Thomas,* 2 Mo. App. 367; *Union Bank* v. *Campbell,* 4 Hump. 394.

MORGAN, J. In the year 1897 the county auditor of Cass county advertised for proposals for the deposit of county funds with the banks of the county, pursuant to the provisions of article 8 of chapter 26 of the Political Code of 1895. The American Exchange Bank of Buffalo, in said county, was thereafter designated by the county commissioners as one of the depositories of said county, and gave its bond as security for the payment to the county of the money so deposited, and to render a true account of such moneys, as provided by said chapter. Such bond, delivered to and approved by the county commissioners of said county, was in the penal sum of $10,000. The American Exchange Bank of Buffalo failed to account for or pay over to said county the sum of $1,189.38. This action was commenced against all the sureties on said bond. The

N. D. R.—16

persons who signed said bond were S. E. Bayley, Neil McPhedran, John Moug, W. W. Merriell, W. L. Jones, C. A. Bullamore, Reuben Beard, P. T. Peterson, James A. Winslow, and P. Masterson, and they signed in the order named. The bond was circulated for signatures by one James A. Winslow, who was the president of the American Exchange Bank, the principal in the bond. The ·bond was executed by each of the sureties without any stipulations or conditions whatsoever, except such conditions as are necessarily implied by law. No one of the sureties entered into any express agreement or condition with said Winslow as to the persons who were to sign said bond, and there were no express conditions or agreements entered into between any of the sureties. While the bond was being circulated for signatures by the president of the bank, and after Bullamore had signed the bond, the name of Jones was erased from said bond by Winslow by drawing through the name of said W. L. Jones, as signed to the bond, and to his affidavit of justification, a red ink line. This erasure was made in the presence of and at the suggestion of one Stafford, who was then a member of the board of county commissioners. Such erasure was made without the knowledge or consent of the four sureties who had signed before Jones signed, and without the knowledge or consent of Bullamore, who had signed before such erasure, and neither of such sureties has since ratified the erasure of such name. The sureties signing after Bullamore did so without any knowledge of the fact that Jones' name had been erased after Bullamore had signed, but the fact that Jones had signed the bond and that his name had been erased was apparent from a mere inspection of the bond when they signed it. Neither the name of Jones nor the names of any of the sureties had been inserted in the body of the bond at the time that the name of Jones was erased, and the names of such sureties were not inserted in the body of the bond until after all the sureties had signed it. The bond was then presented to the county commissioners for approval and approved. All of the sureties have been served with the summons in this action except the surety Winslow, and all have appeared except Bayley, Moug, and Winslow. The defendants Beard and Peterson in their answer deny that they ever signed the bond in question, or authorized any one to sign for them. The other defendants answered, alleging, in effect, that the bond upon which suit was brought was not their contract, nor binding upon them, by reason of the fact of the erasure of Jones' name from said bond without their knowledge or consent. The case was tried before a jury. At the close of the taking of evidence plaintiff's counsel moved the court for a directed verdict in favor of the plaintiff and against the defendants McPhedran, Merriell, and Masterson, for the reason that the evidence shows, without contradiction, that they signed the bond in question, together with Moug and Bayley. This motion was denied. Thereupon special interrogatories were submitted to the jury, and by the jury answered, in reference to the

issues raised by the answers of Beard, Peterson, and Masterson. These answers were that Beard and Peterson signed such bond, and signed it after the name of Jones had been erased therefrom; that the names of the sureties were inserted in the body of the bond after all the sureties had signed it; and that Masterson signed the bond after all the other sureties had affixed their names to the bond. The plaintiff then moved the court for judgment, on the special verdict and undisputed facts, against the defendants McPhedran, Merriell, Masterson, Bullamore, Beard, and Peterson. This motion was denied. The plaintiff then moved for judgment against all the defendants except Bullamore. This motion was also denied. The defendants then moved for judgment in favor of all the defendants interested in the trial and against the plaintiff, dismissing the action. This motion was granted. Judgment was accordingly entered, and the plaintiff has appealed from such judgment upon a settled statement of the case.

The assignments of error raise a single question only, viz., did the facts recited justify the lower court in ordering judgment of dismissal in favor of the defendants? The facts in the case are now mostly stipulated and are undisputed, and the issues raised by the answers are to be determined as questions of law solely. The bond in question was authorized by the provisions of section 1941, Rev. Codes. That section provides that the depository must furnish a bond, with not less than five freeholders as sureties, in double the amount to be deposited with such bank; and a provision is made for justification of sureties, the same as that provided by law for justification of sureties in arrest and bail proceedings. Section 5319 regulates justification of sureties in arrest and bail proceedings as follows, so far as material: "They [sureties] must each be worth the amount specified in the order of arrest, * * * but the judge or justice of the peace, on justification, may allow more than two bail to justify severally in amounts less than that expressed in the order, if the whole justification is equivalent to that of two sufficient bail." The sureties on the bond in question did not justify by appearing before a court or judge to give evidence as to their property and qualifications as sureties, but each surety signed and was sworn to an affidavit stating his qualifications, and that he was worth a stated sum in property not exempt by law from sale or execution, and over and above debts and liabilities. When "justification" is mentioned in considering this case, such affidavits are referred to, and not an appearance before a magistrate and giving testimony as to qualifications. The sureties on this bond, when finally approved, had justified by such affidavits in the aggregate sum of $24,000, without including Bullamore or Jones.

The question to be determined upon the facts stated is, are any of the sureties to be held responsible for the default of their principal? If so, which ones? The plaintiff contends that they are all liable except Jones. The defendants claim that all are exempt from

liability by virtue of the erasure. Jones not being held, is Bullamore to be held liable, inasmuch as he signed before the erasure, and did not consent to such erasure of Jones' name, and had no knowledge thereof until this action was commenced? He signed, therefore, upon the condition that all who had signed before him would share equally with him in case of default in the conditions of the bond, and that he could hold such prior signers to contribution with him in case he paid or was compelled to pay anything on account of the default of the principal. On a former appeal of this same case, this court said: "The first man who signed the bond signed with the understanding that the principal would procure such additional sureties as might be necessary to make the bond comply with the requirements of the law. Each subsequent surety signed with the same understanding and with the additional understanding that the particular persons whose names preceded his as sureties would be liable to him in contribution, should he be required to pay the bond. He signed relying upon their financial responsibility." 9 N. D. 267, 83 N. W. Rep. 12. See, also, *Hessell v. Johnson*, (Mich.) 30 N. W. Rep. 209, 6 Am. St. Rep. 334. Before determining whether Bullamore was released, under the facts in evidence, it must be determined whether the act of Winslow, as agent for Bullamore for the delivery of the bond to the commissioners for approval, was binding upon Bullamore, and the further fact whether the county commissioners had notice of the fact that Bullamore had signed before Jones' name was erased, or had notice of such facts as would necessarily put them upon inquiry. That Winslow was the agent of Bullamore for the purpose of procuring such sureties as would make the bond comply with the law and secure its approval cannot be doubted. His agency was limited to those acts. He was not vested with any discretionary or general powers, and could not bind Bullamore by any changes in the bond without his consent. He had no authority, under his special and implied agency, to substitute other signatures for those that were there when Bullamore signed. In doing so he exceeded his authority. Although Winslow did exceed his authority, that fact does not necessarily release Bullamore from liability on the bond. Bullamore trusted Winslow, and placed it in his power to impose upon him, and also to impose upon the commissioners. If no one else connected with the transaction has been guilty of a violation of duty, then Bullamore should be held responsible upon the bond. If the commissioners did everything required of them under the facts of which they had actual or constructive notice, then Bullamore, having trusted an agent that exceeded his authority, to his prejudice, should be the one that should suffer for his and his agent's delinquency. Brandt, Sur. § 60; *King Co. v. Ferry*, (Wash.) 32 Pac. Rep. 538, 19 L. R. A. 500, 34 Am. St. Rep. 880. If the commissioners had knowledge of the conditions under which Bullamore signed the bond, and approved such bond with such knowledge,

then they acted with notice of the fact that Winslow had exceeded his authority. In such case, Bullamore would not be liable, as the bond approved by the commissioners was not the same bond signed by him. If the commissioners had notice of facts sufficient to put them on inquiry as to the conditions or circumstances under which Jones' name was erased, and Bullamore signed, then they are presumed to have notice of all the facts which the carrying on of such inquiry would bring to their knowledge. It is admitted that Jones' name was erased by drawing a line through it with red ink, and that his signature to his affidavit of justification was erased in the same way. These erasures were plainly discernible by the most casual observation, and a most cursory examination of the bond could not have failed to have led to a discovery of the erasure. The duty devolved on the commissioners to make such examination, in the interests of the public, as well as in the interests of the sureties. Our conclusion is that the erasure of Jones' name, as it appeared on the bond, was such a fact as put them on inquiry as to the circumstances under which it was made. Such erasure was therefore notice to them that Bullamore signed the bond before Jones' name was erased, and without the consent or knowledge of Bullamore. Consequently it was notice to them that Bullamore was absolved from all liability by virtue of having signed the bond. No cases have been cited, and we have been unable to find any, precisely like the present one, upon the facts, so far as the question of implied notice is concerned. The cases are numerous holding that the erasure of the signature and the erasure of the name in the body of the bond are sufficient as facts to put the obligee upon notice. *Fairhaven* v. *Cowgill,* 8 Wash. 686, 36 Pac. Rep. 1093; *Smith* v. *U. S.,* 2 Wall. 219, 17 L. Ed. 788; *Hagler* v. *State,* (Neb.) 47 N. W. Rep. 692, 28 Am. St. Rep. 514. It is also held in many cases that the erasure of the name of an obligor in the body of the bond, who never signed the bond, is sufficient to put the approving authorities on inquiry concerning the facts causing such erasure. *Hessell* v. *Johnson,* (Mich.) 30 N. W. Rep. 209, 6 Am. St. Rep. 334; *King Co.* v. *Ferry,* supra; *Dair* v. *U. S.,* 16 Wall. 1, 21 L. Ed. 491, and cases there cited. In *McCramer* v. *Thompson,* 21 Iowa, 252,— an action on a promissory note,—the court held that the fact that the name of one of the signers was erased, and others had signed thereafter, was a fact sufficient to put the payee on inquiry as to the circumstances under which such erasure was made, and the subsequent signers were released. Our conclusion is that Bullamore cannot be held, by reason of the alteration of the bond, before delivery, to his prejudice; he not having assented to such alteration.

It now devolves upon us to determine whether the sureties Peterson, Beard, Winslow, and Masterson are entitled to be absolved from all liability by reason of the erasure of Jones' name, and the consequent non-liability of Bullamore. It will be remembered that these last-named sureties signed the bond after Jones' name had

been erased therefrom. The erasure was made by Winslow, one of the sureties who signed it thereafter. The fact of the erasure of Jones' name was plainly to be seen by them, and they cannot be heard to say that they did not know of such erasure, nor do they claim that they did not know it. They claim not to be liable upon the hypothesis or contention that the four sureties who signed before Jones did are released, and that in consequence thereof the bond is not a statutory bond, with Bullamore and the four sureties first signing released. If such were our conclusion as to the four sureties first signing, we should, without doubt, hold that they never assumed any liability. But so far as the release of Bullamore is concerned, these subsequent signers cannot claim that they are released in consequence of that fact. They signed with knowledge of the erasure of Jones' name, and were thereby put upon inquiry as to whether such erasure released Bullamore from liability. It will be presumed, therefore, that they signed knowing that Bullamore was actually released from all liability, and must be deemed to have consented to such release, and are now estopped to claim their release by virtue of such erasure or by virtue of the consequent release of Bullamore. *Smith* v. *U. S.*, infra.

We meet a different and more difficult question when we undertake to determine whether the four sureties first signing are to be held liable for the default of the principal in the bond. Each one of these four sureties, viz., Bayley, McPhedran, Moug, and Merriell, signed in the order given, without any express condition or understanding or representation as to subsequent signers. The number of subsequent sureties was in no manner alluded to; nor was it understood or agreed or represented that any particular person or persons were to sign; nor was anything said or understood between Winslow and these sureties, or between these sureties among themselves, as to the financial character or responsibility of subsequent sureties, or the sum or sums for which they should, as between themselves, undertake to bind themselves when they signed the bond. We therefore undertake the determination of this question with the admitted fact that these four sureties signed this bond without any express condition or understanding or knowledge that Jones was to be a surety thereon. They, therefore, signed under implied conditions and legal presumptions only, and what were these? They had a right to infer that there would be five sureties thereon, because the statute provides that such bonds shall be signed by not less than five freeholders, and it also appears from the justifications that they assumed that enough sureties would be secured to bring the aggregate of the sums for which the sureties justified up to $20,000; that sum being double the penalty of the bond. The defendants contend that these four sureties "signed with the implied agreement that each person who should subsequently sign should be liable to him in contribution unless released with his consent." No authorities are cited which we deem to be fairly in point, and we are constrained

to say that the facts of the case at bar do not, in our opinion, warrant the enunciation of that principle in the broad application contended for. In this case we must not lose sight of the fact that at the time of the release of Jones and Bullamore the bond was in process of preparation, and was in no sense a completed bond. No contract, express or implied, had then been entered into between all the sureties or between sureties and obligee. The bond was not then in condition to be approved. Winslow thereafter completed it by procuring four more sureties. The defendants strongly insist that these four sureties were released, or, rather, never bound, upon the principle already stated. Such contention is based upon the following cases, which we will briefly refer to: In *State* v. *Allen*, (Miss.) 10 So. Rep. 473, 30 Am. St. Rep. 563, the sureties signed the bond on the expressed condition that the bond should not be a completed bond until enough sureties had signed and justified in sums that would aggregate the penal sum of the bond. After a sufficient number had signed and justified in such sum in the aggregate, the name of one surety was erased without the consent of any of the other sureties who had signed. It was held that the erasure released all who had signed the bond after the surety whose name was erased had signed. The release of these sureties reduced the aggregate amount of the justification of the remaining sureties on the bond below the penal sum of the bond, in consequence of which their liability was increased beyond the amounts contemplated by their express agreement when they signed the bond, and they were also held not bound. The case presents a condition of actual prejudice to the remaining sureties, and is based upon facts not at all parallel with the facts of the case at bar. *State* v. *McGonigle*, (Mo. Sup.) 13 S. W. Rep. 758, 8 L. R. A. 738, 20 Am. St. Rep. 609, is a case based upon the following facts: A collector's bond was signed by the requisite number of sureties and presented for approval. While before the approving officer one of the sureties' names was erased, and another one procured. The erasure of this name released a surety who had subsequently signed. The person subsequently signing in the place of the surety whose name was erased had no knowledge that the person whose name had been erased had ever been a party to the instrument, and the court held him not liable upon the bond. It also holds that all prior signers were released, because the bond approved was not the obligation entered into by the parties. The court said, in substance: As presented for approval, it was a completed bond, and expressed the contract of the parties as entered into by them. They had agreed to be jointly and severally bound with those whose names appeared on the bond when presented for approval, but did not "agree that the name of Cain should be substituted for that of Dolling." The grounds upon which the decision is based seem to be that the alteration complained of was made after the contract or bond was a completed one. In *State* v. *Churchill*, (Ark.) 3 S. W. Rep. 352, -

the facts are that the bond was altered by the erasure of a name after all the sureties had signed it and it had become a completed bond, and before approval. It is not an authority that the erasure of a name during the procuring of the bond, and before completion, releases those that had previously signed it. In *Smith* v. *U. S.*, 2 Wall. 219, 17 L. Ed. 788, the defendant signed the bond at the same time or after the person whose name was erased without the knowledge or consent of the defendant. The court held the defendant not bound to respond in damages on account of the breach in the conditions of the bond. The rule, as stated in that case, is as follows: "Any variation in an agreement to which the surety has subscribed, which is made without the surety's knowledge or consent, and which may prejudice him, or which may amount to the substitution of a new agreement for the one he subscribed, will discharge the surety." In *State* v. *Craig*, (Iowa) 12 N. W. Rep. 301, the following are the facts: A bond was executed by 11 sureties for the faithful performance of the duties devolving upon Craig as warden of the penitentiary. One George G. Smith signed the bond as surety after seven sureties had signed it. After Smith signed, three others signed as sureties while Smith's name remained thereon. After all the sureties had signed the bond, and before it was offered for approval, the name of Smith was erased without the consent of any of the sureties. The court held the sureties signing before and after Smith released. The court said: "But the bond had been put in circulation for the purpose of obtaining such number of signatures as Craig deemed necessary, and such number as should be found necessary, to secure its approval. We may assume that the sureties in question signed with the understanding that that number would be obtained, and it could not have been understood that that number was to be obtained in such a way that a portion of them could not be held. * * * Their real contract was expressed by the bond as it stood when all the signatures had been obtained, and before the erasure." The court held that the bond was a completed bond, so far as the contract of the sureties was concerned, at the time of the erasure, and that it was prejudicial to the sureties who signed before Smith to erase the name of one surety, thereby releasing three other sureties that had signed after Smith. The facts of the case at bar are not at all parallel with that case. In this case the bond was not completed when the erasure was made. No contract had been entered into between the sureties. In the absence of express agreement, we know of no right that the first signers of a bond have to insist that a subsequent signer of the bond cannot be released when such bond is, after such release, made to comply with the statute, and all implied conditions are complied with, without any possible prejudice to those first signing. In the Craig Case can it be said that the decision would have been the same had the name of Smith been erased before the completion of the bond at the time and under the circumstances under which the name of Jones was erased in the

case at bar? We think not. Without adopting the rule announced in the Craig Case, but measuring for purposes of argument, the facts of the case at bar with the rule announced in that case, the sureties first signing would not be entitled to the judgment obtained by them in this case. At the time of the erasure, Winslow did not consider the bond satisfactory, as he then intended to procure two more sureties. If the sureties first signing in this case, as in the Craig Case, assumed that a sufficient number of sureties would be procured to satisfy Winslow and render the bond approvable, the bond, as finally completed, complied with that assumption. Neither the Craig Case nor any of the cases cited come within the facts of this case. In this case the relation of co-obligors had not come into effect between the persons who had signed before Jones did, either by express agreement or by implication of law. As to such signers there does not exist in the case a semblance of prejudice, either as a matter of fact or as a matter of law. The contention that these sureties are not bound under such a state of facts seems to us to be unwarranted as a matter of justice or principle, and cannot be sustained by authority.

This case has been before the lower court and before this court twice. On this trial all the material facts are stipulated. Both parties made motions in the court below for judgment on the evidence. The plaintiff also moved for a directed verdict. These facts bring the case within the provisions of chapter 63 of the Laws of 1901, authorizing this court to direct the entry of judgment in certain cases. See *Bank* v. *Lang,* 2 N. D. 66, 49 N. W. Rep. 414. The judgment is reversed and the trial court is directed to order judgment against all the respondents except Bullamore. All concur.