Mr. Justice CLIFFORD
 

 delivered the'opinion of the court.
 

 This case comes before the court upon a writ' of error to the Circuit Court of the United States for the Northern District of Illinois. Suit was instituted by the United States, and the record shows that it was an action of debt on the official bond of Charles N. Pine,- late .marshal of the United States for the district where the suit was brought. Service was not made on the principal in the bond, nor on four of the sureties as-named in the declaration. -Gf those served, three were defaulted, and the remaining three., Thomas Hoyne, William B. Snowhook, and Ezekiel S. Smith, appeared and made defence. First two pleaded, — 1, non est factum; 2, performance by principal. Smith filed separate pleas, — 1, Nil debit; 2, non est factum. Issue was joined upon those several pleas, and the parties went to trial. Vei’--diet and judgment were for the plaintiffs, and the defendants ¡excepted and sued out this writ of error.
 

 I. Record shows that the plaintiffs, at the trial, offered the bond described in the declaration in evidence, to prove the ¡issue on their part,- but the defendants objected to the reading of the same as inadmissible, because, as they alleged, it ¡had been altered by the erasure of the name of one of the •sureties. Yielding to that objection, the plaintiffs called the
 
 *227
 
 district judge, and examined him as a witness. He testified to tbe effect that the bond, when it was brought to him for approval, was precisely as- it appeared when offered in evidence, except that the names of the sureties were inserted by him in the introductory part of the instrument. His statement was, that it was brought to him for approval either by the marshal or his principal deputy, and that the erasure as described was there, júst as- if appeared at the time thewitness was examined. ‘W'itne.ss did not see the bond till it was brought to him for' approval with the name erased; but he had previously been informed, both by .the marshal and the person whose name was erased, that the latterdiad objections to having his name remain on the bond. Signatures of' some of the parties not being known to the witness, he held the bond for several days after it was presented, and during that time all of the sureties,.except the defendant, Smith, came in and acknowledged its execution; "Whereupon the witness approved the bond agreeably to the certificate in the -record, which is under his signature.. Substance of the certificate is that all of the parties to the instrument, except the defendant, Smith, acknowledged the genuineness of .their signatures; and that the district judge, being satisfied from his own knowledge and from evidence that the signature of Smith also was genuine, approved. the bond. Being asked by the defendants if Smith had ever consented to the erasure, the witness ahswered that he had no knowledge upon the subject. Relying on the explanations given by the witness, the plaintiffs again offered the_ bond in evidence, and the court, overruling the objections of the defendants, admitted the same to be read to the jury, which constitutes the first exception of the defendants.
 

 Certain treasury transcripts were also produced by the plaintiffs, exhibiting the official settlement -of the accounts of the marshal at the Treasury Department, together with the statement of certain treasury warrants and drafts in, his favor, showing a balance due to the plaintiffs... Evidence was .then offered by the defendants tending to show that the settlement of the marshal’s account as stated in the treasury
 
 *228
 
 transcripts, was not correct. Most of the documents offered for that purpose were objected to by the- plaintiffs, and were excluded by tbe court. Defendants excepted to the rulings' in that behalf, but in the view taken of the case it will not be necessary to examine the questions which the exceptions present.
 

 Having offered evidence upon the merits, they recalled the district judge, and examined him again as to the erasure. Among other things, he testified that before he approved the bond, the person whose name was erased told him that he had signed it with others for the marshal, and that he' had become dissatisfied, and wanted his name taken off; that the marshal and his deputy had both agreed that his name should be erased, and that he was not willing that it should remain.
 

 Same parties also called and examined Philip A. Hoyne, whose name was erased from the bond. Material statements of the witness are that the bond was circulated for signatures by the principal deputy of the marshal, and that the witness signed it with others at that time; that he, the witness, became dissatisfied somé days before it was approved, and requested to have his name erased, and that the marshal and his deputy promised to do it; that not being able to get hold of the'bond, he mentioned the subject to the district judge, and explained to him that he “could not consent to'have it there at all.” Suggestion of the judge was that he, the witness, in justice to the other signers of the bond, should see them and tell them what he wanted, and the witness stated that in a short time he spoke to all of them except defendant, Smith, who was then absent, and told them that he wanted his name erased, and that he was not willing to let it remain there as one of the sureties. Erasure was made before the bond was approved, but when, or by whom, the witness did not know.
 

 II. Theory of the defendant, Smith, was, that he was dis- . charged from all liability on the bond in consequence of the erasure, and he accordingly wished the court to instruct tire jury in substance and effect as follows: 1. That if the jury
 
 *229
 
 believed from the evidence that the name of P. A. Hoyne was erased from the bond in suit, without the knowledge or consent of the defendant, and that h’Adid not acknowledge the bond as his, subsequent to such erasure, the jury should find the issue in his favor. 2. That the law places the burden of proving such consent upon the plaintiffs, and if they have failed to make such proof they are not entitled to a verdict. 3. That notice of the erasure to the district judge who approved the bond was notice to the Government. But the court refused so to instruct the jury, and the defendant excepted.
 

 HI. Principal question for decision arises upon the exception of the defendant to the refusal of the - court to instruct the jury as requested in the first prayer presented. by the defendant.
 

 Tendency of the evidence plainly was to show that the person, whose name was erased, signed the bond before or at the same time with the defendant. Nothing else can .be inferred from his own testimony, in which he states that he signed with others at the time the bond was circulated for signatures; and his ready acquiescence in the suggestion of the district judge, that in justice to the other signers he ought to see them and tell them what he wanted, strongly favors the same view. Testimony of the distiict judge also confirms that theory, and makes it certain that all had signed before the erasure and before any interview had taken place between him and the person whose name was erased. Record does not show who made the erasure, but the proof' is satisfactory that the marshal and his deputy agreed to do it, and that it remained in the possession of one of them, until it ,was presented to the. district judge for approval.
 

 - Defendant insists that the erasure from the bond of the name of one of the sureties .after Smith had signed it, and without his knowledge or consent, and. before the approval of the bond, was sufficient to discharge him from all liability.
 

 On the other "hand the plaintiffs, although, they concede
 
 *230
 
 that the erasure was after the defendant had .signed the bond', and that it was done without .his knowledge or consent, yet ipsist, that inasmuch as the erasure was made before the bond was approved by the district judge, it left the liability of all concerned precisely as it would have stood, if the person whose name was erased had only promised to sign and had not fulfilled his engagement.
 

 Proposition as stated may’be correct as applied to all the sureties who subsequently appeared before the district judge, aiid acknowledged the bond as altered to be their deed, and-it certainly is correct as to the.' person whose name was erased. Liability cannot attach to the person whose name was erased before the instrument was approved, and all •those who subsequently consented to remain liable, notwithstanding the alteration, are estopped' under the,.circumstances to interpose any such objection. They have waived the effect which the alteration in the instrument would-otherwise have had, and consented to be bound, and therefore have suffered no injury.
 
 Volenti non jit
 
 injuria.- Granting all this, still it must be borne in mind, that the alteration in this case was made without the knowledge’or consent of the defendant, and the case shows that he never appeared before the district judge and acknowledged his signature, or .in any manner ever waived the right to insist that the instrument was not his deed. Materiality .of the alteration is not denied, and the plaintiffs admit that it is apparent on the face of the instrument, but still they insist that inasmuch as the marshal, before he enters on the duties of his office, is inquired by law to become bound before the district judge with sufficient sureties for the performance of the conditions, it is clear that the bond is in no manner executed, ■ until it is presented to the district j udge and is by him approved.
 
 *
 
 Approval, say the counsel, is as essential to its execution, as is the acknowledgment-made in court to a recognizance, and the argumenfis that no-alteration made in the instrument before such approval, can have the effect to
 
 *231
 
 discharge any one of the sureties, unless it be shown that it was made with the knowledge or consent' of the obligees. Reason for the conclusion, as suggested by the plaintiffs, is that, where the ^alteration precedes the approval, the presumption is, that it was made by a stranger, and not by the. party seeking to enforce the obligation.
 

 Support to the proposition, as stated, is attempted to be -drawn from the case of
 
 United States
 
 v.
 
 Linn et al.,
 

 *
 

 and it must be confessed that there are expressions in the opinion of the majority of the court which give some countenance to that view of the law. Question in that' case arose upon the demurrer of the plaintiffs to the plea of the defendants, , and the judgment of the court was in fae-t based upon the ground that the allegations of the plea wer’e insufficient to establish the defence. Alteration charged in that' case was that the seals had been attached to the signatures, after the instrument was signed and before it was delivered, and-the allegations of the plea were, that the alteration was made without the consent, direction, or authority of the surety, but it was not alleged' that it was done
 
 without his knowledge,
 
 or by whom it was done. •
 

 Referring to those omissions in the plea, the court say, that iff view of those -circurnstances, it was not an unreason? able inference, that if the plea had disclosed by whom the alteration was made, it would have appeared that it did not áffect the validity of the instrument. 'Much stress also was laid-upon the fact, that there was nothing upon the face of the instrument’indicating that it had been altered, or casting a suspicion upon its validity, and the court held, that the burden of proving when and • by whom the alteration was made under the state of facts alleged in the plea, was properly cast upon the defendants. But the court admitted that a party claiming under an instrument, which appears on its face to have been altered, was bound to explain the alteration, and show that it had not been'improperly made. Reference was also made by the court, at the same time, to
 
 *232
 
 two decided cases as asserting that doctrine, and it is clear that both the cases cited
 
 *
 
 fully sustain the position.
 

 General rule is, that where any suspicion is raised as to the genuineness of au altered instrument, whether it be' apparent upon inspection, or is made -so ’ by extraneous evidence, the party producing the instrument and claiming under it, is bound to remove the suspicion by accounting for the alteration.
 
 †
 
 Exceptions to the rule undoubtedly arise, as where the alteration is properly- noted in- the attestation clause, or where the alteration is against the interest of the party deriving title under the instrument; but the case under consideration obviously falls under the general rule.
 
 ‡
 
 Every material alteration of a written instrument, according to the old decisions, whether made hy a party or by a stranger, was fatal to its validity if made after execution, and while the instrument was in the possession and under the control of the party seeking to enforce it, and without the privity of the party to be affected by the alteration.
 
 §
 
 Grounds of the doctrine, as explained in the early cases and by text writers, were twofold. First. .That of public policy, which dictates that no man should be permitted to take the chance of committing a fraud without running any risk of losing by the event in case of detection. Secondly. To insure the idéntity of the instrument and prevent the substitution of another without the privity of the party concerned.
 
 ||
 
 Courts of justice have not always adhered to that rule, but the decisions' of recent date in the parent country, show that her courts have returned to the old rule in all its vigor.
 
 ¶
 
 Judge Story, in
 
 United States
 
 v.
 
 Spalding,
 

 **
 

 condemned so much of the rule
 
 *233
 
 as holds that a material alteration of a deed by a stranger, without tbe privity of the obligor or obligee, avoids the deed, and the weight of authority in this country is decidedly the other way. He objected to the rule as repugnant to com-' mon sense and justice, because it inflicted on an innocent party all the losses occasioned by mistake or accident, or by the wrongful acts of third persons.
 
 *
 

 IV. Present case, however, does not depend upon that rule; nor, indeed, is it necessary to express any opinion as to what is the true rule upon the subject, except to say that where the alteration is apparent on the face of the instrument, the party offering it in evidence and claiming under it is bound to show that the alteration was -madé under such circumstances that it does not affect his right to recoyer.
 
 †
 

 Defence in this case, as exhibited in the prayer for instruction, was based not only upon the ground that there was a material alteration in the bond, but also upon the ground that the defendant was a surety, and, consequently, .both considerations must be kept, in view at the same time. True inquiry, therefore, is, what is the rule to be applied in a case where it appears that the contract of a surety has been altered' without his knowledge or consent, and where it appears that the effect of' the alteration is to augment his liability ? Mr. Burge says,- that an alteration in the obligation or contract, in respect to which a person becomes surety, extinguishes the obligation, and discharges the sur.ety, unless he has become, by a subsequent stipulation, a surety for, or has consented to the contract,as altered.
 
 ‡
 
 Same author says, if there be any variation in thsmontract made without the consent of the surety, and which is, in effect, a substitution of a new agreement, although the original agi’éement
 
 *234
 
 may, notwithstanding such variation, be substantially performed, the surety is discharged.
 
 *
 

 Authorities are not necessary to'show that the alteration, in this ease, was a material one, as it obviously increased the liability of the
 
 defendant;
 
 and in ease of the default of the principal and payment by the defendant, diminished his means of protection by the way of eóntrib'ution; and the rule is universal that the alteration of an instrument in a material point by the party claiming' under it, as by inserting or striking out names without the authority or consent of the other parties concerned, renders the instrument void, unless subsequently approved or ratified.
 
 †
 

 Responsibility of- a surety rests -upon the validity and terms of his contract, but when- it is changed 'without his-knowledge or authority, it becomes a new contract, and is invalid, because it is deficient in the essential element' of consent. Where, after the execution of a bond by the principal and the surety; conditioned for the performance by the former of his duty as collector in certain townships, the name of another township was added with the consent of the principal, but without that of the surety, this court held, in
 
 Miller
 
 v.
 
 Stewart,
 

 ‡
 

 that the latter was discharged from all' obligation, because the duties imposed by the instrument in its altered state were not those for the performance of which he had made himself responsible, and that 'the defect could not be cured by.declaring.on the. condition as it originally stood. Opinion of the court was given in that case by Judge Story; and his remarks upon the subject are decisive of the question under consideration. Indeed, nothing can be clearer, both upon principle and authority, than- the doctrine that the liability of a surety is not to be extended by implication beyond .the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no farther. He has
 
 *235
 
 a right to stand upon the-very terms of his contract, and it he does not assent to any variation of it, and a variation is made,, it is fatal.
 

 "When the contract of a guarantor or surety is duly ascertained and understood by a fair and liberal construction o'l the' instrument, the principle, says Chancellor Kent, is well settled, that the case must be- brought strictly within the guaranty, and the liability of the surety cannot be extended by implication.
 
 *
 
 Liability, of a surety,, say the court, in
 
 McClusky
 
 v. Cromwell,
 
 †
 
 is always
 
 strictissimi
 
 juris,-and cannot be extended by construction; and this court, in the ease of
 
 Leggett et al.
 
 v.
 
 Humphrey,
 

 ‡
 

 adopted the same rule, and explicitly decided that a surety can never be bound beyond the scope of..his engagement.
 
 §
 

 Argument is unnecessary to show that a variation of ;thc contract was made in this case, because it i& admitted, and it is equally c'ertain, that the person whose name was erased is fully discharged, and, consequently, that the- plaintiffs cannot declare upon the original obligation as if stood before the alteration was made. Neither a court of-Jaw or equity, said this court, in
 
 McMicken
 
 v.
 
 Webb et al.,
 

 ||
 

 will lend its aid to affect sureties beyond the plain and necessary import of their undertaking, nor add a new term or condition to what they ■ have stipulated. Sureties must be permitted to remain in precisely the situation they have" placed themselves; and it is no justification or excuse with another for attempting to' change their situation to allege or show that they would be benefited by such change.' Such, say the court, in that case, is the doctrine -in England, in this court, and in the State courts, and the authorities cited fully justify the remark. 'Whenever the contract is varied, whether by giving time to the principal or by an alteration of the contract,- it presents
 
 *236
 
 a new cause*"of action, to which the surety has never given his assent, and with which, therefore, he has nothing to do.
 
 *
 

 Evidence shows that the alteration was made without the knowledge of the defendant, and there is neither fact nor circumstance in the case from which to infer any subsequent assent. Undoubtedly, he knew when he signed the bond that the law required that it should be approved by the district^ udge; but his- knowledge of the law in that behalf furnishes no ground of inference that he authorized the alteration, or that he consented to be bound in any other manner, or to any greater extent, or under' any other circumstances than what was expressed in the instrument. Supreme Court of Massachusetts held, in the case of the
 
 Agawam Bank
 
 v. Sears,
 
 †
 
 that a surety did not authorize the principal to make a material alteration in the note, by permitting him to take it to the bank for discount, and that such an unauthorized alteration discharged the surety; and where' two sureties signed
 
 á
 
 probate bond, subject to the approval of the judge of probate, and.it was subsequently altered by the judge of probate by increasing the penal sum, with the consent of the principal, but without the knowledge of the sureties, and was then signed by two additional sureties, who did not know of the alteration, and then was approved by the judge of probate, the same court held that the bond, though binding oh the principal, was void as to all the sureties. See, also,
 
 Howe
 
 v.
 
 Peabody,
 
 2 Gray, 556;
 
 Burchfield
 
 v. Moore, 25 English Law and Equity, 123. Analogous as those cases are, however, they are not as directly in point as that of
 
 Martin et al.
 
 v.
 
 Thomas et al.,
 

 ‡
 

 which is the latest decision upon the subject pronounced by this court. Suit in the coui*t below, in that case, was against the sureties in a replevin bend. Statement of the case shows that the bond was given by the defendant in replevin with sureties, to obtain the return of the property which was the subject of the replevin suit. Defendant subsequently erased-his name from the bond with the consent of the marshal, but without the knowledge or
 
 *237
 
 consent of the sureties; and -this court held, that the bond was thereby rendered invalid against the sureties. Principle of these decisions is, that thé alteration varies the terms of the obligation, and that the contract thereby ceases to be the contract for the due pei’formance of which the party became surety, and wherever that appears to be the fact, and the surety is without fault, he is discharged.
 

 Correct rule, we think, is stated by Lord. Brougham in
 
 Bonar
 
 v. Macdonald,
 
 *
 
 and which is substantially the same as that adopted by Mr. Burge in his treatise on surety. Sub stance of the rule is', that any variation in the agreement to which the surety has subscribed, which is made without the surety’s knowledge or consent, and which may prejudice him, or which may amount to a substitution of a new agreement* for the one he subscribed, will discharge the surety, upon the principle of the maxim
 
 non hoco infosdera veni.
 
 Intentional error cannot be imputed to the district judge, but the undisputed facts show that the erasure was made after the defendant signed the instrument, and before its approval, and without the knowledge or consent of the defendant.
 

 For these reasons, we are of the opinion that, the first prayer for instruction, presented by the defendant, should have been given.
 

 Judgment of the Circuit Court, therefore, is reversed, and the cause remanded, with direction to issue a new
 
 venire.
 

 Cranek, 219.
 

 *
 

 1 Stat. at Large, 87.
 

 *
 

 1 Howard, 112.
 

 *
 

 Henman
 
 v.
 
 Dickinson, 5 Bingham, 183; Taylor
 
 v.
 
 Mosely, 6 Carrington & Payne, 273.
 

 †
 

 1 Greenleaf on Evidence, 564.
 

 ‡
 

 Knight
 
 v.
 
 Clements, 8 Adolphus & Ellis, 215; Newcomb Presbrey, 8 Metcalf, 406.
 

 §
 

 Pigot’s Casa, 11 Coke, 27; Master
 
 v.
 
 Miller, 4 Term, 330.
 

 ||
 

 2 Taylor on Evidence,
 
 $
 
 1618.
 

 ¶
 

 Davidson
 
 v.
 
 Cooper, 11 Meeson & Welsby, 778; Same
 
 v.
 
 Same, 13 Id. 343; 2 Taylor on Evidence, $ 1624.
 

 **
 

 2 Mason, 482.
 

 *
 

 2 Parsons on. Bills, 574; 1 Greenleaf on Evidence (10th ed.l, § 567, p. 749.
 

 †
 

 Parsons on Bills, 577; Greenleaf on Evidence (10th ed.), § 564; Knight
 
 v.
 
 Clements, 8 Adolphus & Ellis; 215; Clifford
 
 v.
 
 Parker, 2 Manning & Granger, 909; Wilde
 
 v.
 
 Armsby, 6 Cushing, 314.
 

 ‡
 

 Burge on Suretyship, p.-214.
 

 *
 

 Evans
 
 v.
 
 Whyte, 5 Bingham, 485; Archer
 
 v.
 
 Hale, 4 Id. 464; Eyre
 
 v
 
 Bartrop, 3 Haddock, 221; Bonser
 
 v.
 
 Cox, 6 Beavan, 110; Archer
 
 v.
 
 Hudson, 7 Id. 551.
 

 †
 

 Boston
 
 v.
 
 Benson, 12 Cushing, 61.
 

 ‡
 

 9 Wheaton, 702.
 

 *
 

 3 Commentaries (10th-ed.), 183; Birkhead
 
 v.
 
 Brown, 5 Hill, 635.
 

 †
 

 1 Kernan, 598.
 

 ‡
 

 21 Howard, 76.
 

 §
 

 United States
 
 v.
 
 Boyd et al., 15 Peters, 208; Kellog v. Stockton, 29 Pennsylvania State, 460.
 

 ||
 

 6 Howard, 296..
 

 *
 

 Gass
 
 v.
 
 Stinson, 3 Story, 452.
 

 †
 

 4 Gray, 25.
 

 ‡
 

 24 Howard, 315.
 

 *
 

 1 English Law <fc Equity, 1.