### UNITED STATES GLASS CO. v. MATHEWS et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

#### No. 247.

1. RELEASE OF SURETY—ALTERATION OF INSTRUMENT.

Sureties on a bond conditioned for the payment of royalties called for by a contract of license are not released by an alteration of such contract which can in no way affect the obligation of the bond, though made without their knowledge.

2. SAME—ALTERATION OR COLLATERAL AGREEMENT.

After the execution of a contract of license for the use of certain patented machines, which provided that the licensor should furnish additional machines if called for, by agreement between the parties a typewritten slip was pasted on the margin opposite the provision relating to the additional machines, which read: "Said machines to be shipped said licensee within 30 days after written notice is given to licensor." *Held*, that such slip did not constitute an alteration of the original contract

affecting a surety, but was simply a memorandum of a subsequent and collateral agreement. 81 Fed. 993, reversed.

In Error to the Circuit Court of the United States for the District of West Virginia.

The United States Glass Company, a corporation of Pennsylvania, the plaintiff in error, herein called the "licensor," being the owner of patents for the manufacture of glassware, executed a written agreement called a "license," dated November 22, 1892, by which it licensed the West Virginia Flint Bottle Company of Central City, a West Virginia corporation, herein called the "licensee," to use six machines to be furnished by it, the licensee to pay $125 per month royalty for each of the six machines, with the right to the licensee to call for as many additional machines as it deemed expedient, paying therefor at the rate of $100 per month for each of the additional machines, the licensee agreeing to give a bond satisfactory to the licensor in double the amount of the royalty on said six machines for one year. Accordingly, a bond dated November 30, 1892, was executed by H. G. Mathews, L. H. Cox, L. A. Cross, George McKendree, and Z. T. Vinson, to the United States Glass Company, in the penalty of $18,000, the condition of which was that the West Virginia Flint Bottle Company of Central City would "well and truly pay to the United States Glass Company the license fee or royalty as and at the times provided for in the license from the said United States Glass Company to the said West Virginia Flint Bottle Company, said license being hereto attached." L. H. Cox was the president of the West Virginia Flint Bottle Company, and L. A. Cross was its secretary, and signed the bond as sureties. The six machines were furnished by the plaintiff, and operated by the licensee for twelve months. No additional machines were called for. The licensee having failed to pay the royalty on the six machines furnished, the license was terminated under its terms, and this suit was entered upon the bond. The sureties pleaded non est factum, and by agreement a jury trial was waived, and the case tried before the court. The court made a special finding of facts, and entered judgment for $7,541.50 against Cox and Cross, and ruled that the other defendants, Mathews, McKendree, and Vinson, were not liable because of the facts found with regard to a typewritten memorandum pasted upon the license after the bond was executed, the memorandum having been made by the licensor upon the suggestion of Cross and Cox, but without the knowledge or consent of Mathews, McKendree, or Vinson. The special finding of facts is that the licensor and the licensee executed the license on November 22, 1892, and on November 30th the sureties signed the bond, with the license attached, and afterwards Cross, the secretary of the licensee, by direction of Cox, its president, at the end of the paragraph of the license which gave the licensee the right to call for as many additional machines as it might "deem expedient at the royalties, fees, and conditions herein named, which the licensor hereby agrees to furnish according to the stipulations herein contained," interlined in lead pencil the words, "Said machines to be shipped to said licensee within thirty days after written notice is given to said licensor." After so interlining the paper in pencil, it was mailed on December 8, 1892, to the president of the licensor, with a request to make the interlineation in ink. He did not do so, but had the pencil interlineation typewritten upon a separate slip of paper, which he pasted on the margin of the paper opposite the interlineation, and so as to cover it. This was done after the bond had been signed, and after the other sureties had delivered it to Cox to be by him delivered to the plaintiffs. Cox said nothing about it, because he thought it would not affect the liability of the sureties. The court ruled upon these facts that in law they constituted an alteration which released those sureties who did not consent, and that Mathews, McKendree, and Vinson, not having consented, were discharged, and judgment was entered in their favor. This ruling of law was excepted to by the plaintiff, and the writ of error brings it here for examination.

Henry M. Russell, for plaintiff in error.
John H. Holt, for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge (after stating the facts). The ruling of the court below proceeds upon the ground that there was an alteration of the contract for the performance of which the defendants were sureties, which alteration, being made without their consent, discharged them. It is to be noticed, first, that the supposed alteration was not in the bond itself. The bond sued upon in this case is a separate and distinct instrument of writing from the license, and, the alteration not being in the instrument which they signed, it cannot be denied by the defendants that the instrument which they signed remains just as it was when they signed it. This case does not, therefore, belong to the class where a signed paper is altered without the knowledge of the signers,—an act which the law most severely condemns. It is said, however, that, the license having been attached to the bond, if there was an alteration of the license by the parties to it, there was an alteration of the bond. It should be noticed, however, that by the condition of the bond the sureties do not become bound for the fulfillment 'of all the terms and conditions of the license, but only to pay the license fee or royalty as and at the times provided for in the license. The license itself is a very complex and artificially drawn instrument, covering five pages of print in the record. It has many stipulations with regard to the use of the patented machines and their surrender, for renewals of the license and many other matters, but the guaranty of the sureties had only to do with the payment of the royalty, and nothing to do with any of the other provisions and stipulations, while the alleged alteration of the license had nothing to do with the stipulations as to the payment of the royalty. It is only by the most strained and improbable theory of possible consequences that it can be suggested how the supposed alteration in the license could in any wise affect the sureties who made themselves liable only for the payment of the royalty, or in any way increase or diminish the amount they might be called upon to pay. This case does not, therefore, turn upon the law applicable to instruments which have been altered without authority from those signing them, but upon the law with regard to the liability of sureties. This liability, it is true, is always strictissimi juris, and not to be extended by implication beyond the scope of the words of the surety's engagement; and where the surety's liability under the instrument signed by him is dependent upon another instrument, and the latter is rendered void, or materially altered, the instrument signed by the surety is also discharged. Miller v. Stewart, 9 Wheat. 681–706. On grounds of public policy very slight alterations of negotiable paper are held to be material, and any change of date or amount or rate of interest or place of payment is held to discharge parties to the instrument upon the ground that they are material alterations. Wood v. Steele, 6 Wall. 80. Commercial instruments of the class which pass from hand to hand are, on grounds of public policy, most zealously protected from spoliation. But, even with regard to a promissory note, it was held in Mersman v. Werges, 112 U. S. 139, 5 Sup. Ct. 65, that the addition of the signature of a

surety to a promissory note, though in the form of a joint promisor, without the consent of the maker, does not discharge him. The ground of the decision in that case was that neither the liability of the maker of the note, nor the effect of a mortgage given to secure it, was materially altered by the added signature. It appears to us, in the present case, that by no possibility could the words alleged to have been added to the license have varied the liability of any of the parties in any of the matters to which the bond had reference. The added words had no more to do with the liability of the sureties under the bond than if, by a subsequent memorandum, it had been stipulated that the additional machines should be painted a particular color, or be shipped by a particular railroad.

This brings us to what we consider to be the decisive point in the present case, namely, that the memorandum pasted on the license was not in law an alteration of the license attached to the bond. If the parties to the license after its execution had indorsed on its outside cover the words, "The additional machines are to be shipped to said licensee within 30 days after written notice is given to the licensor," intending the indorsement as a memorandum of a subsequent agreement between them, it could hardly be contended that there had been any alteration of the license. What was done was that on the margin of the clause of the license treating of additional machines there was pasted a separate slip of paper, on which was typewritten, "Said machines to be shipped said licensee within 30 days after written notice is given to licensor." This was a memorandum outside of the paper. It was evidence of an independent collateral agreement between the parties to the license, making more definite one of the clauses of the license, but not in any way a change or alteration of the license, and did not remotely touch any of the provisions the performance of which the sureties had guarantied. It did not substitute a new agreement for an old one; it made no variation in the obligation or liability of the sureties, and was simply a memorandum pasted upon the agreement with reference to a matter which did not concern the sureties, and which left the original agreement intact. Smith v. U. S., 2 Wall. 219–237; Wehr v. German Congregation, 47 Md. 177–190; Bank v. Hyde, 131 Mass. 77.

The case of Bank v. Hyde, above cited, is pertinent. The holder of a promissory note made a memorandum on the back that after a certain day the interest would be less than that stated in the body of the note. This was done by agreement between the maker and the holder, without the knowledge of the surety. In a suit against the surety the court was asked to rule that a change in the rate of interest was a change in the contract, and that the indorsement on the note of this change was a material alteration of the note which discharged the surety. The supreme court of Massachusetts held that there had been no alteration, but a memorandum of an independent collateral agreement, not injurious to any of the parties. The reasoning of the opinion puts the decision upon grounds of justice and common sense, and not upon mere technical quibbling, by which it has sometimes happened that sureties have been held discharged. Upon the facts found by the court in the present case, as we regard them,

there was no dealing between the principal and creditor which changed the liability of the sureties, and no alteration of the contract between the principal and creditor; certainly no material alteration, such as would discharge the sureties. Judgment reversed, and new trial awarded.