## ZIEGLER v. HALLAHAN.

(Circuit Court, E. D. Pennsylvania. January 7, 1904.)

### No. 52.

1. PRINCIPAL AND SURETY—ALTERATION OF CONTRACT—DISCHARGE OF SURETY.

    Where defendant guarantied performance of a lease for 10 years as surety for the tenant, which lease originally contained covenants binding the lessee to pay rent monthly in advance and keep the premises in repair, a modification of the lease before the tenant took possession, without defendant's consent, by the insertion of a covenant that, in the event of total or partial destruction of the premises by fire or other casualty, the lease from that time should be void, and should be surrendered to the lessor, constituted a material alteration of the contract, and discharged defendant from liability as surety.

Wm. Y. C. Anderson, Wm. Jay Turner, and Richard C. Dale, for plaintiff.

Crawford & Loughlin and John G. Johnson, for defendant.

J. B. McPHERSON, District Judge. The question for decision arises upon the following case stated:

"The plaintiff, Mary Helen Ziegler, on April 2, 1901, made, executed and delivered to one Moses H. Lichten an indenture of lease, for the premises known and numbered as No. 50 North 8th street in the city of Philadelphia, of which indenture a copy is hereto attached, marked 'Exhibit A,' and made part hereof, and the defendant, Peter T. Hallahan, by writing became surety for the fulfillment of all the obligations of said Moses H. Lichten under and by virtue of said indenture of lease, said contract of suretyship being indorsed on Exhibit A.

"On or about April 29, 1901, an agreement supplemental to said indenture of lease, without consultation with, or approval of, the defendant, was executed by and between the plaintiff and the said Moses H. Lichten, as follows:

" 'It is hereby mutually agreed between M. Helen Ziegler and Moses H. Lichten, the parties to the foregoing indenture of lease, that the following shall become part and parcel thereof, with like effect as if the same were embodied in the foregoing agreement.

" 'It is hereby further covenanted and agreed in the event of the total or partial destruction of the within demised premises, rendering the same untenantable by reason of fire or other casualty, this lease shall from such time become absolutely null and void and the within lease shall be surrendered by the lessee to the lessor.

" 'In witness whereof the parties hereunto set their hands and seals this 29th day of April, A. D. 1901.     Mary Helen Ziegler.   [Seal.]
" 'Moses H. Lichten.     [Seal.]'

"Said Moses H. Lichten violated the covenants and conditions of said lease by subletting the premises thereby let and demised, and by assigning said lease without the consent of the plaintiff, and by cutting a passageway through the south party wall of said premises into the adjoining premises, in consequence whereof, on January 4, 1902, the plaintiff, by virtue of the warrant of attorney to confess judgment in ejectment, contained in said lease, entered a judgment in ejectment against said Moses H. Lichten in the court of common pleas No. 3 for the county of Philadelphia, of December term, 1901, No. 2,180, and issued a writ of habere facias possessionem against said Moses H. Lichten for the recovery of possession of said premises.

"Said Moses H. Lichten thereupon filed his affidavit, of which a copy is hereto attached, and obtained a rule in said court of common pleas to show cause why such judgment in ejectment should not be opened, and said Moses H. Lichten let in to a defense, all proceedings to stay. To said affidavit of Moses H. Lichten the plaintiff filed her answer, as required by the rules of said court of common pleas, and thereafter depositions were taken by the said Moses H. Lichten and the plaintiff.

"On March 31, 1902, said court of common pleas discharged said rule.

"On April 19, 1902, the said Moses H. Lichten caused to be issued a certiorari from the Supreme Court of Pennsylvania to said court of common pleas, but did not file any bond, as required by the laws of the commonwealth of Pennsylvania, for the purpose of making said certiorari act as a supersedeas.

"On April 30, 1902, the plaintiff issued an alias writ of habere facias possessionem under the aforesaid judgment in ejectment, and by virtue of said writ recovered possession of said premises; which until said date remained in the possession of said Lichten.

"On May 8, 1902, the record in said action of ejectment was duly certified to the Supreme Court of Pennsylvania, and on February 10, 1903, the said record was returned to said court of common pleas, with a remittitur certifying that the judgment of said court of common pleas was affirmed.

"The rent for said premises reserved in said indenture of lease was paid by said Moses H. Lichten up to January 1, 1902. On January 6, 1902, the agents of said Moses H. Lichten mailed to the plaintiff's attorney a check for the month's rent in advance of said premises, due January 1, 1902, but

said check was returned to said agents of said Lichten on January 9, 1902, accompanied by the following letter:

"'Philadelphia, Jan. 9th, 1902.

"'Dear Sirs:—I beg to return herewith check to the order of Mary Helen Ziegler for $500, sent her on January 6th, in settlement of one month's rent for premises No. 50 North Eighth street, due in advance January first.

"'I have advised Miss Ziegler not to accept this check in view of the fact that she has canceled the lease with Mr. Lichten and has begun an action in ejectment for the purpose of obtaining possession of the premises. You are fully advised regarding the reasons for this course of procedure. Will you be good enough to acknowledge receipt of check enclosed, and oblige,

"'Yours very truly,                          Wm. Jay Turner.

"'To Mess. A. J. & L. J. Bamberger.'

"Between January 1st, 1902, and April 30th, 1902, the plaintiff received no compensation for the use of said premises.

"The yearly rental value of said premises is agreed to be $6,185.

"Should the court be of opinion that the defendant, Peter T. Hallahan, is indebted to the plaintiff, M. Helen Ziegler, by virtue of the contract of suretyship above set forth, under the foregoing facts, then judgment shall be entered for said plaintiff in the sum of $2,047.51, with interest thereon from April 30, 1902, or for so much less than that amount as the court shall determine shall be entered, if it shall be of opinion that any allowance shall be made by reason of the tender of $500, set forth in the statement of facts.

"Should the court be of opinion that the defendant, Peter T. Hallahan, is not indebted to the plaintiff, M. Helen Ziegler, by virtue of the contract of suretyship above set forth under the foregoing facts, then judgment shall be entered for the defendant.

"The right to sue forth a writ of error to the United States Circuit Court of Appeals for the Third Circuit for the purpose of having a review of the judgment entered in accordance with the opinion of the court is hereby expressly reserved unto both parties to this proceeding."

The lease need not be set out in full. It was to run for 10 years from May 1, 1901, and the premises were to be used only as a jewelry store and as a cloak and suit salesroom. It contained covenants, inter alia, to pay a rent of $6,000, monthly in advance; not to assign or underlet without the lessor's written consent; to keep the premises in good condition, order, and repair; and to deliver possession at the end of the term in as good condition, order, and repair as the property was at the beginning of the term, reasonable wear and tear and damage by accidental fire excepted. The lease contained no provision relieving the tenant from liability for the rent in case the premises should be destroyed or become untenantable, and the consequence of this omission was that the tenant was bound for the rent in such a contingency. Bussman v. Ganster, 72 Pa. 285. He had expressly agreed to pay rent for the whole term without any qualification, and he had therefore taken upon himself the risk that the premises might cease to be tenantable. This express obligation of the contract on the part of the lessee, and also his right to retain possession during the whole of the term, were changed by the agreement of April 29, 1901, and thereafter the agreement upon these points was that "in the event of the total or partial destruction of the within demised premises, rendering the same untenantable by reason of fire or other casualty, this lease shall from such time become absolutely null and void, and the within lease shall be surrendered by the lessee to the lessor." Thus, the obligation of the tenant to pay rent during the whole of the term became an obliga-

tion to pay only so long as the premises remained tenantable, and his right to retain possession to the end of the term became a right to possession for the same contingent period.. He had been previously bound to repair all damage, save from accidental fire, but he was now relieved from this obligation if the damage should proceed from any other casualty than accidental fire, and should be extensive enough to prevent him from using the property for the purposes contemplated by the lease. The question for decision is, whether such a change of the contract is so far material as to discharge the surety. This question has been answered in different language by different courts, but there is a substantial agreement among the replies. The Supreme Court of the United States, in *Fidelity Co. v. United States* (a case decided early in December, 1903) 24 Sup. Ct. 142, 48 L. Ed. ——, stated the rule as follows:

"It is conceded that, by the general law of suretyship, any change whatever in the contract for the performance of which the guarantor is liable, made without his consent, such, for instance, as an extension of time for payment, if made' upon sufficient consideration, discharges the guarantor from liability. Miller v. Stewart, 9 Wheat. 681 [6 L. Ed. 189]; Smith v. United States, 2 Wall. 219 [17 L. Ed. 788]; Reese v. United States, 9 Wall. 13 [19 L. Ed. 541].

"In an ordinary guaranty the guarantor understands perfectly the nature and extent of his obligation. If he becomes surety for the performance of a building contract, he is presumed to know the parties, the terms of their undertaking, the extent and feasibility of the work to be done, the character and responsibility of the principal obligor, and his ability to carry out the contract. If he guarantees the payment of a particular debt, he usually knows the exact amount of the debt, the time when it matures, and something of the ability of the principal to meet it. If he becomes responsible for the payment of the principal's debts generally, or lends his credit to a proposed purchaser of goods, he knows the amount of his liability, and the means of his principal to meet them. In such cases he contracts in reliance upon the exact terms of his principal's undertaking, and has a right to suppose that no change will be made without his consent; and the courts have gone so far as to hold that any change will exonerate him, though it really redound to his benefit."

In *Bensinger v. Wren*, 100 Pa. 500, the Supreme Court of Pennsylvania uses language quite as decided:

"Any alteration of a contract by the principal parties, without the assent of the surety, is fatal to its validity, as against the surety. Even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation, and is bound no further. Any unauthorized variation in an agreement which a surety has signed that may prejudice him, or may substitute an agreement different from that which he came into, discharges him. Miller v. Stewart, 9 Wheat. 680 [6 L. Ed. 189]; Smith v. United States, 2 Wall. 219 [17 L. Ed. 788]. It is an established rule of law that a party to a contract like that of these defendants shall not be bound beyond the extent of the engagement, which appears, from the terms of the contract and the nature of the transaction, to have been in his contemplation at the time of entering into it, and that his liability cannot, without his consent, be extended or enlarged, either by the obligee or by operation of law. Hence an increase of the capital stock of a bank was held to discharge the sureties of the cashier from liability for any misconduct or mistake of the cashier, committed after any part of the increased capital was paid into the bank. Grocer's Bank v. Kingman, 16 Gray, 473."

So, also, in *Nesbitt v. Turner*, 155 Pa. 429, 26 Atl. 750, it was said: "'When the principal party modifies his contract, it is fatal to its validity as against the surety, even if it be for his benefit, or if it do him no

harm." A host of authorities to the same effect may be found in 24 Amer. & Eng. Enc. of Law (1st Ed.) 837 et seq., cited in support of the proposition that "any material alteration in the terms of the contract of suretyship will release the surety if he has not consented to the change."

Undoubtedly the contract now under consideration has been changed, but it remains to inquire whether the change was material. What is a satisfactory test of materiality? It may be difficult to formulate a test that shall be applicable to all cases, but, as it seems to me, there is much to be said in favor of the rule laid down by Lord Justice Cotton, speaking for the Court of Appeals, in Holme v. Brunskill, 3 Q. B. Div., on page 505:

"The true rule, in my opinion, is that if there is an agreement between the principals with reference to the contract guarantied the surety ought to be consulted, and that if he has not consented to the alteration, although in cases where it is without inquiry evident that the alteration is unsubstantial, or that it cannot be otherwise than beneficial to the surety, the surety may not be discharged, yet that if it be not self-evident that the alteration is unsubstantial, or one which cannot be prejudicial to the surety, the court will not, in an action against the surety, go into an inquiry as to the effect of the alteration, or allow the question whether the surety is discharged or not to be determined by the finding of a jury as to the materiality of the alteration, or on the question whether it is to the prejudice of the surety, but will hold that in such a case the surety himself must be the sole judge whether or not he will consent to remain liable notwithstanding the alteration, and that if he has not so consented he will be discharged."

Or, as the rule was put by Lord Justice Amphlett in Croydon Gas Co. v. Dickinson, 2 C. P. Div., on page 51:

"The rule is that when time is given, or the position of the surety has been altered by the dealings of the principals, the surety is discharged. That, however, must be taken with certain limitations. That is to say, if it depends upon inquiry, the court will not go into that inquiry, and, unless the fact is self-evident, the court will not consider the question, and of course the rule will not be applicable where the change cannot be otherwise than advantageous to the surety. For instance, if a surety has joined in a bond for £1,000, and the creditor agrees that the debt shall be £500 only, then the alteration can only be for the benefit of the surety, and his responsibility cannot be lost by the change."

See Prairie State Bank v. United States, 164 U. S. 237, 17 Sup. Ct. 142, 41 L. Ed. 412.

For further and similar examples, such cases as Dickson v. Wolf, 5 Wkly. Notes Cas. 37; Barns v. Carney, 6 Wkly. Notes Cas. 448; Flanigan v. Rossiter, 7 Wkly. Notes Cas. 180; and Preston v. Huntington (Mich.) 34 N. W. 279—might be cited, where the surety continued to be bound, although the contract of lease had been changed, because the only alteration was a reduction of the rent, and this was indisputably to his advantage. The reduction by agreement was merely equivalent to giving the tenant credit for a definite sum, as he came to pay each installment, and no one could hesitate concerning the beneficial effect of such an act upon the surety's obligation. But I think there is room for hesitation concerning the possible effect of the change now being considered. Here is a lease, about to begin for a comparatively long term, of a building favorably situated in the shopping district of the city of Philadelphia. Its value is shown by the amount of rent agreed to be paid, and by the

sum agreed upon by the parties in the case stated. The right to possess land so situated, even without buildings, may be worth much money. A tenant may develop so profitable a business as to find it of decided advantage to bear the whole cost of restoring the premises to a tenantable condition, in order that his profits may continue, and the surety may be depending on those profits to be repaid an antecedent debt, or to be furnished with money for some other enterprises in which he and the tenant have embarked. Other situations may be conceived: The surety may be indorser upon the defendant's commercial paper, with no hope of being saved from loss unless the business can be carried on, or he may be a manufacturer whose goods probably can be sold on commission by the tenant in the rented premises to better advantage than elsewhere. Other contingencies may exist. These are enough, I think, to suggest forcibly that it is impossible to say, without inquiry into the circumstances and the surroundings of the transaction, what the effect of the alteration now in question would be upon the interests of the surety, and if this is true the judgment of the surety himself should be final. Neither a judge nor a jury has the right to weigh the advantages and disadvantages, and decide which balance should decline; for this is to bind the obligation of a contract upon the shoulders of a man who has never agreed to it.

The case of Kingsbury v. Westfall, 61 N. Y. 361, decided by the Commission of Appeals, is the only case to which I have been referred that is somewhat at variance with this conclusion. But the facts differed in some respects. The leased premises were burnt on January 1, 1858, but the tenant and his guarantor continued to be bound for the rent. Nothing was paid for the period between April 1, 1858, and April 1, 1860, and the suit was brought to recover these arrears. On April 9, 1860, the landlord released the tenant from further liability, in consideration of the tenant's release of the unexpired portion of the term. The commission decided that this change in the contract did not release the surety from obligation to pay the rent that had already accrued, and put the decision in part upon the ground that the right to occupy the vacant lot for the remainder of the term was of no value whatever. Indeed, the surety himself had offered to prove upon the trial "that the use of the demised premises after the fire was not worth for the residue of the term to exceed one dollar per year." In view of these facts, the commission said:

"It is true that the contract was changed, but the obligation which the lessees undertook to perform, so far as it relates to the payment of the rent which had then accrued, was not changed; it remained in the precise terms it was before; it was, as to the then future, the executory portion of it that was abrogated.

"It is not pretended that the right of the defendant to be put in possession of the vacant lot for the unexpired term, in the place of the lessees, could, by any possibility, have resulted to his advantage. The case then stands in principle as if the plaintiff had, mainly as a charity to the lessees, released them from the hard fate of an accidental fire—changed the contract by releasing them from their obligation any longer to pay rent upon a property that had by accident become nearly worthless to them. This, though it should come within the letter of the rule, would, should it be applied as the defendant insists it should be, do injustice to its spirit. The obligation to

pay the rent for which judgment has been recovered has not, in letter or spirit, been changed; nor is it pretended that any right of the defendant growing out of the contract is, so far as it relates to that obligation, in any respect altered or impaired."

I think it is clear that the question in the case now before the court was not distinctly presented nor considered by the Commission of Appeals, and that the point really decided was that, as the rent sued for had accrued before the lease was changed, the obligation of the surety had become so fixed as not to be affected. Here the change in the contract was made before the term had even begun, and of course before the rent now sued for had accrued.

In accordance with the case stated, judgment is directed to be entered in favor of the defendant.