## WALLACE ET AL. v. PABST BREWING COMPANY.

[No. 10,569.    Filed December 16, 1920.]

1.  INDEMNITY.—*Bond for Extension of Credit under Separate Contract.—Liability of Sureties.—Construction.—Principal and Surety.*—The liability of sureties upon a bond given to indemnify against loss by extension of credit under a separate contract, depends upon the undertaking and conditions stated in the bond, and in that respect is to be strictly construed; but, where they are asking to be discharged from liability because of some violation of or departure from the terms of the particular contract, they must, to succeed, show that they have sustained some damage.    p. 429.

2.  INDEMNITY.— *Bond and Contract Separate.— Unauthorized and Immaterial Memorandum Placed on Contract.—Sureties to Bond Not Discharged.—Principal and Sureties.*—The placing of an unauthorized and immaterial memorandum upon the contract after the execution of the bond and without the knowledge or consent of the sureties, does not constitute a material change and alteration of the bond so as to release the sureties from liability thereon.    p. 430.

From Madison Circuit Court; *Luther F. Pence,* Judge.

Action by the Pabst Brewing Company against James B. Wallace and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Paul Brown, George M. Barnard, Leffler & Ball* and *Kittinger & Diven,* for appellants.

*Charles O. Roemler, Harry O. Chamberlin* and *Bagot & Free,* for appellee.

McMAHAN, J.—In 1911 Charles Fletcher and appellee entered into a contract whereby appellee agreed to sell to said Fletcher beer in such quantities as Fletcher desired to purchase at certain prices in carload lots f. o. b. Milwaukee. In consideration of the execution of said contract the appellants signed a bond, wherein they agreed to indemnify and hold appellee harmless from any loss by reason of any failure of Fletcher to carry out the provisions of said contract, to the amount of $2,000, and further agreeing that nothing therein should be construed to preclude appellee from extending greater credit to Fletcher, nor from applying payments in such manner as it might see fit. Said contract and bond were executed in duplicate, one copy being held by appellee and the other copy by Fletcher.

After the execution of said contract and bond, Fletcher ordered beer from appellee in carload lots and also in less than carload lots. The carload lots were shipped from Milwaukee. The broken lots were shipped from appellee's warehouse in Indianapolis to Fletcher at Newcastle, Indiana.

In addition to the prices fixed in said contract as the prices for the beer f. o. b. Milwaukee, appellee charged Fletcher fifty cents per barrel and fifteen cents per case for all beer shipped from Indianapolis, said additional charges being to cover the freight from Milwaukee to Indianapolis, which was paid by appellee. After the execution of said contract and bond, and after appellee

had shipped beer to Fletcher from Indianapolis, appellee's manager at Indianapolis made a notation or memorandum at the bottom of the first page of the copy of the agreement held by Fletcher, said memorandum being made with pencil and reading as follows:

"Add 50c per barrel
" 15c per case
{ to the above prices for all goods shipped from Indianapolis to pay for freight from Milwaukee to Indianapolis."

Appellants had no knowledge that appellee was shipping beer to Fletcher from Indianapolis and making extra charges to cover freight, neither did they know that said memorandum was made on said copy of the contract, nor did they consent thereto.

In May, 1913, Fletcher was indebted to appellee in the sum of $3,795.95, at which time appellee notified appellants' of said fact and demanded of appellants as guarantors the sum of $2,000, which they refused to pay. Upon such refusal appellee filed its complaint herein, alleging the execution of said contract and bond and that Fletcher was indebted to it in the sum of over $2,000. A copy of said bond was attached to and made a part of the complaint. The court found the facts specially and stated as a conclusion of law that appellants were indebted to appellee in the sum of $1,980.56. From a judgment in favor of appellee, appellants prosecute this appeal and assign as error that the court erred in its conclusion of law and in overruling their motion for a new trial.

Appellants' contention is that there was a material change and alteration of the bond without their knowledge or consent, which released them from any liability thereon.

The court found the facts above stated and that the

additional charges for freight on the beer shipped from Indianapolis amounted to $519.20.

In considering this case we should keep in mind that the supposed alteration was not in the bond signed by appellants, but was made upon the duplicate copy of the contract between Fletcher and appellee. The bond sued upon in this case is a distinct instrument of writing from the contract, although it forms the last page of the folio on which the contract is printed. The alleged alteration not being in the instrument signed by appellant, they cannot successfully claim that the instrument which they signed does not remain just as it was when they signed it. As said by the court in *United States Glass Co.* v. *Mathews* (1898), 89 Fed. 828, 32 C. C. A. 364: "This case does not, therefore, belong to the class where a signed paper is altered without the knowledge of the signers—an act which the law most severely condemns. It is said, however, that, the license having been attached to the bond, if there was an alteration of the license by the parties to it, there was an alteration of the bond. It should be noticed, however, that by the condition of the bond the sureties do not become bound for the fulfillment of all the terms and conditions of the license, but only to pay the license fee or royalty as and at the times provided for in the license. * * * It is only by the most strained and improbable theory of possible consequences that it can be suggested how the supposed alteration in the license could in any wise affect the sureties who made themselves liable only for the payment of the royalty, or in any way increase or diminish the amount they might be called upon to pay. This case does not, therefore, turn upon the law applicable to instruments which have been altered without authority from those signing them, but upon the law with regard to the liability of sureties."

The contract in that case, after the execution of the same, and after the execution of the bond securing it, was modified by adding thereto the statement: "The additional machines are to be shipped to said licensee within thirty days after the written notice is given to the licensor." In speaking of this memorandum the court said: "This was a memorandum outside of the paper. It was evidence of an independent collateral agreement between the parties to the license, making more definite one of the clauses of the license, but not in any way a change or alteration of the license, and did not remotely touch any of the provisions the performance of which the sureties had guaranteed. It did not substitute a new agreement for an old one; it made no variation in the obligation or liability of the sureties, and was simply a memorandum pasted upon the agreement with reference to a matter which did not concern the sureties, and which left the original agreement intact."

In the instant case appellee and Fletcher entered into an agreement whereby appellee agreed to sell to Fletcher in such quantities as Fletcher desired to purchase beer for certain prices f. o. b. Milwaukee in carload lots, the prices being subject to change at the option of appellee in the event of increased cost of manufacturing, transportation, or federal tax. It was further provided that such agreement should not be binding until it had been signed by one of appellee's officers and attested by its corporate seal. The evidence shows without conflict that the contract between appellee and Fletcher was executed in duplicate, one copy being held by Fletcher and one by appellee. This agreement was written by appellee's manager at Indianapolis, and after it was signed by Fletcher, and after appellants had signed the bond in controversy, both copies of the contract and bond were mailed to appellee at Milwaukee

for the approval and signature of appellee. One of said copies, after being so. signed and sealed, was returned to appellee's manager in Indianapolis and by him mailed to Fletcher. After the execution of the contract and bond, Fletcher ordered beer in less than carload lots, which was shipped to him from Indianapolis. The manager at that time explained to Mr. Fletcher that there would be an additional charge upon all beer shipped from Indianapolis to cover the freight between Milwaukee and Indianapolis, as appellee had paid the freight from Milwaukee to Indianapolis on such beer, and said manager, in order to make it plain to Fletcher, wrote the above statement on the margin of the contract at the bottom of the first page. No such change or memorandum was made upon the copy of the contract held by appellee. There is no evidence, and neither did the court find as a fact, that appellee authorized said manager to make said memorandum, or that it had any knowledge that said manager did so make said memorandum on the copy of the contract held by Fletcher, nor is there any evidence or finding that the manager had any authority to make said indorsement upon the contract.

Appellants' liability under the bond was limited to $2,000, although appellee was authorized to extend greater credit to Fletcher without in any manner affecting the liability of appellants.

The contract and bond in question may be likened to a building contract and contractor's bond. The sureties upon such bonds do not stand in the same relation 1. to such contract as do the sureties upon a note or a bond which itself constitutes the entire agreement between the parties. Their liability depends upon the undertaking and conditions stated in the bond, and in that respect is to be strictly construed, but, where they are asking to be discharged from liability because

of some violation of or departure from the terms of the particular contract, they must, if they would succeed, show that they have sustained some damage. *Schreiber* v. *Worm* (1904), 164 Ind. 7, 72 N. E. 852. By the agreement between appellee and Fletcher, appellee was not required to pay the freight on beer shipped from Milwaukee, and if, pursuant to some subsequent or collateral agreement between appellee and Fletcher, it had paid the freight on such shipments, appellants would not under their bond be liable for such freight, neither would they have been released from their liability under their bond by reason of the fact that appellee had paid such freight and had charged the same to Fletcher. That was a matter between Fletcher and appellee in which appellants were not interested. Neither do we think that a different rule should apply on the shipments made by appellee from Indianapolis. The price charged by appellee for the beer shipped from Indianapolis was the same as the price for beer shipped from Milwaukee. Appellee, however, did charge Fletcher fifty cents per barrel and fifteen cents per case on all beer shipped from Indianapolis to cover the freight which appellee had paid on such beer when shipped from Milwaukee to Indianapolis. So far as appellants are concerned, the extra charge for freight amounts to no more than an overcharge.

There is nothing in the finding of facts or in the evidence to show that it was the intention of any one to change or alter the original contract between appellee and Fletcher when the pencil memorandum 2. was made upon the copy of the contract held by Fletcher. Our judgment is that the alleged alteration and memorandum was immaterial and unauthorized, and that the court did not err in its conclusion of law, or in overruling appellants' motion for a new trial.

Judgment affirmed.