## FIDELITY & CASUALTY CO. OF NEW YORK v. METAL WINDOW PRODUCTS CO.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2768.

John M. Robinson and T. C. Guthrie, both of Charlotte, N. C., for appellant.

C. W. Tillett, Jr., and C. H. Gover, both of Charlotte, N. C., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an action brought by the appellee, Metal Window Products Company, against the Perfected Window Company, George W. Lan-

caster, and the appellant, the Fidelity & Casualty Company of New York, a corporation, in the superior court of Mecklenburg county, N. C. Service of summons was made only on the appellant, the casualty company. The cause was removed to the District Court of the United States for the Western District of North Carolina, and a trial had before a jury which returned a verdict in favor of the appellee, who was plaintiff below, and will be referred to here as the plaintiff, for $7,088.53, with interest, upon which verdict judgment was entered by the court below, from which judgment this appeal was taken.

Two of the defendants, George W. Lancaster and the Perfected Window Company, controlled an invention for metal windows, and under date of May 21, 1924, a contract was entered between them on the one part, and the plaintiff on the other, contemplating the manufacture, assembly, and sale of the Lancaster window; the manufacture or fabrication of the strips to make the window being imposed by the contract upon Lancaster and the Perfected Window Company, and the assembly and sale of the window was undertaken by the plaintiff. The contract of May 21, 1924, gave to the plaintiff the territory of the states of Virginia, North and South Carolina. Lancaster and the Perfected Window Company undertook to fabricate enough of the raw material into the finished shapes necessary for the construction of the window to enable the plaintiff to supply the trade in the states assigned to it by the contract.

The plaintiff corporation was formed for the purpose of assembling and selling the window.

The appellant, who will be referred to here as the defendant, gave a bond dated October 9, 1924, guaranteeing the performance of the contract by the Perfected Window Company and Lancaster. The obligation of the bond was as follows:

"Whereas, the above bound Principals have entered into a written contract with the Obligees bearing date of May 21, 1924, granting to the Obligees the exclusive right to assemble and sell certain articles covered by patents owned by the Principals, as set forth in the said contract, within the territory defined in the said contract; and to supply the Obligees certain materials under the conditions and on the terms set forth in the said contract.

"Now, therefore, the condition of the foregoing obligation is such that if the Principals shall faithfully perform the contract on their part and deliver to the Obligees the fabricated steel as provided therein for the period of one year from November 1st, 1924, then this obligation shall be void, otherwise to remain in full force and effect."

This bond was not signed by the principals or either of them, but was duly executed by the defendant, and turned over to the plaintiff before November 1, 1924.

On November 4, 1924, the plaintiff entered into an agreement with Lancaster and the Perfected Window Company, modifying and changing the contract of May 21, 1924, which additional agreement is as follows:

"Charlotte, N. C., November 4, 1924.

"In consideration of $1.00 paid by each to the other it is hereby agreed that the territory of the Metal Window Products Co., a corporation chartered under the laws of the State of North Carolina with its main office in the city of Charlotte is enlarged to include the following states for the assembling, selling, manufacturing, distributing, etc., the Perfected Metal Window, the patent rights of which are owned by G. W. Lancaster and the Perfected Window Co. of Virginia, the headquarters of both being Richmond, Va.; North Carolina, South Carolina, Georgia, Virginia, Florida, Alabama, Tennessee, Mississippi, Louisiana, Arkansas, Missouri, Texas.

"The Metal Window Products Co. through its authorized officers agrees that in consideration for the above additional territory that it will purchase dies and equipment suitable for cutting material economically, or to have this work done by some outside concern using our dies for this purpose. 2. To change the manner of payment outlined in contract dated May 21, 1924, to the following: 50% payment to accompany order and the balance to be paid in three equal monthly installments of thirty days, sixty and ninety days. 3. To increase sales minimum of 1,500 windows as drawn up in contract dated May 21, 1924, to 2,400 for the above territory.

"This contract signed this the fourth day of November, 1924.

"Perfected Window Co.,
"By G. W. Lancaster,
"Metal Window Products Co.,
"By A. M. Webb, Sec."

The plaintiff perfected an organization looking to the carrying out of its contract, and, claiming that the defendants Lancaster and the Perfected Window Company had breached the contract, brought this action.

A number of important questions have been raised, as to whether the contract was breached by Lancaster and the Perfected Window Company, and as to whether the

agreement of November 4, 1924, so modified the original contract as to release the surety, and as to the measure of the damages, if any, to which the plaintiff was entitled.

■ In our view of this case, it is only necessary to consider one question. It is admitted that the casualty company had no notice whatever of the agreement of November 4, 1924, entered into between the plaintiff and the defendants Lancaster and the Perfected Window Company, changing and modifying the contract of May 21, 1924; and that appellant was in no way consulted with regard to it, and did not at any time ratify it.

An examination of the contract and agreement shows that the agreement of November 4, 1924, modified the original contract in three respects: (1) The territory governed by the contract was increased from three states to twelve states; (2) the guaranteed minimum annual sales were increased from 1,500 to 2,400 units; and (3) the terms of payment were changed from 50 per cent. on delivery to 50 per cent. accompanying orders, the payment of the other 50 per cent. being changed from "as collected" not to exceed 12 months, to equal payments of 30, 60 and 90 days.

The contract of May 21, 1924, was expressly referred to in the bond given by the defendant as the contract guaranteed by the bond, and it remains for us to decide whether or not the changes made without the consent of the defendant were so material as to relieve the surety on the bond. We think they were, and that their effect was to so change the contract that it was entirely different from the one guaranteed by the bonding company, and that to hold that the bond guaranteed the contract as changed would be to hold the bonding company to an obligation which it did not assume.

■ It is not necessary to cite authorities to the effect that a compensated surety can only be relieved where the circumstances clearly justify such relief, and that the old rule as to the tender treatment of accommodation sureties does not apply to bonding companies that sell their credit for a stipulated price, known as a premium. They are, in equity, entitled to be treated on the same footing as a merchant who sells his goods on credit for a profit. This rule has been expressly recognized by this court. Southern Surety Co. v. Plott et al. (C. C. A.) 28 F.(2d) 698 (decided October 16, 1928). Pickens County v. National Surety Co. (C. C. A.) 13 F.(2d) 759.

In the latter case, Judge Parker well said: "It is well settled that the rule of strictissimi juris, ordinarily applied in relief of an individual surety, is not applied in case of compensated sureties, and that where a bonding company, for a monetary consideration, has insured against failure of performance of a contract, it must show that it has suffered some injury by reason of departure from the strict terms of the contract, before it can for that reason be discharged from its liability."

■ Nor could the bonding company complain for the failure to give notice where no damage has resulted from such failure. New Amsterdam Casualty Co. v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 16 F.(2d) 847.

■ Yet it is also true that where the original contract between the parties, the contract guaranteed by the bond, is materially changed, and the conditions and obligation of the modified contract are radically different from those in the contract guaranteed, the surety cannot be held for breach of the modified contract.

It has long been an established principle of law "that any agreement with the creditor which varies essentially the terms of the contract without the assent of the surety, will discharge such surety from responsibility." Encyc. U. S. S. C. Rep., vol. 9, p. 722, and authorities there cited.

This principle is fully discussed by Mr. Justice White in Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, and seems too well settled to necessitate the citing of authorities.

■ Where the principals' authority is extended without the consent of the surety, the surety is discharged. Miller v. Stewart, 9 Wheat. 680, 6 L. Ed. 189. In the latter case the territory over which a tax collector had jurisdiction was enlarged from eight to nine townships without consent of the surety, and it was held that the surety was discharged from responsibility for moneys subsequently collected. In the present case the territory embraced in the contract was enlarged from three to twelve states without the consent or even knowledge of the surety. "Responsibility of a surety rests upon the validity and terms of his contract, but when it is changed without his knowledge or authority, it becomes a new contract, and is invalid, because it is deficient in the essential element of consent." Smith v. United States, 2 Wall. 219, 17 L. Ed. 788.

■ It is true that where the alteration is merely colorable the surety is not discharged, but the changes in the contract under consideration here cannot be said to be merely colorable.

Applying these principles, we are of the opinion that a change in the scope of the territory, covered by the contract, is such a material change that the bonding company should have had notice thereof, and should have been consulted with respect thereto. If A contracted with B to build three houses, and furnishes bond for the performance of the contract, and afterward the contract is enlarged to include twelve instead of three houses without notice to the surety, the surety could not be held on the contract for the twelve houses.

It is strongly contended on behalf of the plaintiff that this action was brought on the original contract, and that the enlargement of the territory was not material in its effect on the bonding company. The original contract as amended by the agreement of November 4, 1924, was the contract that governed and controlled the transactions of the parties throughout the period for which damages are claimed, and the contract as modified was the contract that was in force at the time the suit was brought. The plaintiff cannot ignore its agreement of November 4, 1924, and it certainly cannot be said that this agreement was not essentially material in its effect on the bonding company. The contract of May 21, 1924, was the contract mentioned in the bond, and the only contract guaranteed by the surety company. Another and a very different contract was in effect between the parties from and after November 4, 1924, and at the time of the bringing of the action. The defendant moved the court to instruct the jury that the alteration of the contract released the surety, which the court refused to do. This refusal constituted reversible error.

In view of our conclusion on this question, it is not necessary to consider the other points raised.

The judgment of the court below is, accordingly, reversed.